THE FIDELITY & CASUALTY COMPANY OF NEW YORK v. NORTH
CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY,
WAYNE NITROGEN, INC., E. W. HARRIS, GEORGE DEWEY
HUDSON, BILLY FAISON, OLLIE FAISON, JOHN FRYER, KEN-
NETH RAY OVERBY, HARVEY EDWARDS, JOAN MILDRED
EDWARDS, AND GARY A. PRICE

No. 7210SC529

(Filed 25 October 1972)

**1. Insurance § 87— omnibus clause — construction**

Generally, an omnibus clause should be construed liberally in
favor of the insured and in accordance with the policy of the clause
to protect the public.

**2. Insurance § 87— liability policy — use of truck — loading and unloading
— persons insured**

The loading and unloading of a tank truck is a use of the truck
within the meaning of a liability policy which insures against loss
"arising out of the ownership, maintenance or use" of the truck, and
all persons actively engaged in the loading and unloading of the
truck are additional insureds under the policy.

**3. Insurance § 93— vehicle liability policy — general liability policy —
pro rata and excess insurance clauses — primary liability**

The "pro rata" clause in a liability policy on a truck and the
"excess insurance" clause in a general liability policy are not repug-
nant so as to require that they be read out of the policies; the liability
policy on the truck is the primary policy, and the liability of the ex-
cess insurer arises only after the limits of the collectible insurance
under the truck policy have been exceeded.

APPEAL by plaintiff and by defendant, North Carolina Farm
Bureau Mutual Insurance Company, from *Canaday, Judge,* 20
March 1972 Session, WAKE Superior Court.

This is a civil action seeking declaratory relief by way of
a determination of the respective contractual obligations of
two insurance companies under their contracts of insurance.

On 2 June 1966 a truck owned by George D. Hudson and
driven by his agent Billy Faison was on the premises of Wayne
Nitrogen, Inc., for the purpose of having its three, 500 gallons
each, tanks filled with pressurized liquid anhydrous ammonia.
There were two unauthorized passengers in the truck, one of
them the driver's brother. The truck was left in gear and
with the ignition key in place.

After the transfer hose from Wayne Nitrogen, Inc.'s storage tank was inserted into one of the tanks on the truck and the main valve of the storage tank opened by E. W. Harris, agent of Wayne Nitrogen, Inc., one of the unauthorized passengers turned the truck ignition switch on to obtain heat; the truck lunged forward breaking the transfer hose and thus allowed anhydrous ammonia to escape into the air.

E. W. Harris was overcome by the gas and unable to turn the main valve off; the ammonia continued to flow for approximately 30 minutes until Air Force personnel from Goldsboro, wearing protective masks, turned the valve off, stopping the flow of ammonia from the storage tank.

As a result of this incident several claims for recovery of damages for injury to person and property were filed. The insurer of the truck, North Carolina Farm Bureau Mutual Insurance Company, (Farm Bureau) and the general liability insurer of Wayne Nitrogen, Inc., The Fidelity and Casualty Company of New York, (F and C) acted jointly in defending and settling these suits and claims while preserving the right of each to proceed against the other for the enforcement of rights they may have with respect to each company's policy coverage.

Each company paid $3,476.28 in settlement of property damage claims, $5,562.50 in settlement of personal injury claims, and $60.70 for court costs, a total of $9,099.48 each. Plaintiff, F and C, further paid $4,250.06 legal fees and expenses in defending civil actions against E. W. Harris and Wayne Nitrogen, Inc.

F and C contends that the Farm Bureau policy also covered E. W. Harris and Wayne Nitrogen, Inc., as additional insureds; that the F and C policy was excess coverage only; and that Farm Bureau wrongfully refused to defend the claims against Harris and Wayne Nitrogen, Inc.

Farm Bureau contends that Harris and Wayne Nitrogen, Inc., were not insured under its policy and that it should pay nothing and is entitled to recover back what it has paid; that, even if Harris and Wayne Nitrogen, Inc. are insured under its policy, the F and C policy is not excess coverage and that Farm Bureau should pay on a pro rata basis only.

The relevant portion of Farm Bureau's policy provides: (1) To pay on behalf of the insured all sums which the insured

shall become legally obligated to pay as damages because of bodily injury or destruction of property caused by accident *arising out of the ownership, maintenance or use* of the automobile. (2) The word "insured" includes the named insured and, if an individual, his spouse, and any person while using the automobile, provided the actual use of the automobile is by the named insured, his spouse, or with the permission of either. F and C contends that since E. W. Harris and Wayne Nitrogen, Inc. were loading the truck, they were using the truck within the coverage of the policy.

The Farm Bureau policy contains a clause which provides that if there is any other applicable insurance its liability shall be prorated with that other applicable insurance. The F and C policy contains a clause which provides that its liability shall be excess only if it arises out of injury by non-owned vehicles.

The trial court held that the loading and unloading of vehicles is a use of the vehicle even without a specific provision to that effect in the Farm Bureau policy, but that such use must be performed by the named insured or an agent employed by the named insured, and that therefore Wayne Nitrogen, Inc. and its employee, Harris, were not covered by the policy. The trial court further found that the other insurance clauses of the two policies were repugnant to each other, that both are to be read out of the policies, and therefore that both insurance companies must share the liability on a pro rata basis. There was no finding as to the relative liability of the truck owner and Wayne Nitrogen, Inc. or their agents, determining whether one was the sole tort-feasor, a joint tort-feasor or whether one was primarily or secondarily liable.

*Teague, Johnson, Patterson, Dilthey & Clay by Ronald C. Dilthey for plaintiff appellant.*

*Dees, Dees, Smith & Powell by William W. Smith for defendant appellant.*

CAMPBELL, Judge.

[1]  The widespread enactment of financial responsibility and compulsory insurance laws has caused a decided trend in the courts toward liberal construction of omnibus clauses. It is the purpose of the Financial Responsibility Act to provide protection for persons injured or damaged by the negligent opera-

tion of automobiles. *Hawley v. Insurance Co.*, 257 N.C. 381, 126 S.E. 2d 161 (1962) ; *Swain v. Insurance Co.*, 253 N.C. 120, 116 S.E. 2d 482 (1960). Generally, an omnibus clause should be construed liberally in favor of the insured and in accordance with the policy of the clause to protect the public. *Chatfield v. Farm Bureau Mut. Auto. Ins. Co.*, 208 F. 2d 250 (4th Cir. 1953). The terms "ownership, maintenance or use" should not be treated as mere surplusage. They were placed in the policy in order to cover situations distinct and separate from any other term. Absent specific language to the contrary, they must be given effect in accordance with their common, daily, non-technical meaning. Ambiguity in a policy which requires interpretation as to whether the policy provisions impose liability requires construction in favor of coverage and against the company. *Williams v. Insurance Co.*, 269 N.C. 235, 152 S.E. 2d 102 (1967).

[2] It is a matter of normal construction to hold that "use" means the loading and unloading of motor vehicles within the terms of the omnibus insurance clause which insures against loss arising out of the ownership, maintenance and use of a motor vehicle, especially when the motor vehicle is a truck designed to transport goods. There is adequate precedent, and we so hold, that when the policy is silent on the point, loading and unloading is using an insured motor vehicle. *Liberty Mutual Ins. Co. v. Truck Insurance Exch.*, 245 Ore. 30, 420 P. 2d 66 (1966) ; *Red Ball Motor Freight v. Employers Mut. Liability I. Co.*, 189 F. 2d 374 (5th Cir. 1951) ; *Travelers Insurance Co. v. American Fidelity & Cas. Co.*, 164 F. Supp. 393 (D. Minn. 1958).

Farm Bureau urges this Court, however, to hold that although use does include loading and unloading operations, a third person who has no connection with a vehicle and who is only participating in the loading or unloading activities is not an additional insured under the vehicle liability policy. This is the view taken by the Ohio Court. *Travelers Ins. Co. v. Buckeye Union Casualty Co.*, 172 Ohio St. 507, 178 N.E. 2d 792, 95 A.L.R. 2d 1114 (1961). (A bulk oil tank employee, while loading customer's oil tank truck, spilled some of the oil on the truck driver to his injury. It was held that the bulk oil tank employee was not an insured under the truck policy even though engaged in a loading operation.) *Buckeye Union Cas. Co. v. Illinois National Ins. Co.*, 2 Ohio St. 2d 59, 206 N.E. 2d

209 (1965). (In this case a bag boy at a grocery store loaded the groceries in the trunk of a customer's automobile. After doing so he injured the customer when shutting the trunk lid. It was held the bag boy was not an insured under the automobile policy.)

This Ohio rule may be summarized as follows: (1) A third party not connected with the vehicle must be shown to have been an actual user with the named insured's permission before he will become an additional insured under the vehicle policy; (2) Loading and unloading are but component parts of an overall use; (3) The loader or unloader is covered by the policy only if he has first qualified as an insured by some other use of the vehicle. The Ohio view has not been followed by a majority of the states. This is pointed out in the dissenting opinion in *Buckeye Union Cas. Co. v. Illinois National Ins. Co., supra.*

An insurance policy is a contract between the parties, and the intention of the parties is the controlling guide in its interpretation. It is to be construed and enforced in accordance with its terms insofar as they are not in conflict with pertinent statutes and court decisions. *Hawley v. Insurance Co., supra.*

The policy provision in question speaks of liability "arising out of the ownership, maintenance or use" of the truck. The words "arising out of" are not words of narrow and specific limitation but are broad, general, and comprehensive terms effecting broad coverage. They are intended to, and do, afford protection to the insured against liability imposed upon him for all damages caused by acts done in connection with or arising out of such use. They are words of much broader significance than "caused by." They are ordinarily understood to mean "originating from," "having its origin in," "growing out of," or "flowing from," or in short, "incident to," or "having connection with" the use of the automobile. *Red Ball Motor Freight v. Employers Mut. Liability I. Co., supra; Schmidt v. Utilities Ins. Co.,* 353 Mo. 213, 182 S.W. 2d 181 (1944); *Merchants Co. v. Hartford Accident & Indemnity Co.,* 187 Miss. 301, 188 So. 571 (1939). The act of loading and unloading a truck is not an act separate and independent of the use and is an act necessary to accomplish the purpose of using the truck.

The parties do not, however, contemplate a general liability insurance contract. There must be a causal connection between the use and the injury. This causal connection may be shown to

be an injury which is the natural and reasonable incident or consequence of the use, though not foreseen or expected, but the injury cannot be said to arise out of the use of an automobile if it was directly caused by some independent act or intervening cause wholly disassociated from, independent of, and remote from the use of the automobile. *Bituminous Casualty Corp. v. Hartford Accident & Indem. Co.,* 330 F. 2d 96 (7th Cir. 1964).

We find better reasoning in the view that the "use" of a vehicle includes its loading and unloading, and that all persons actively engaged in the loading and unloading with the permission of the named insured are additional insureds under policy omnibus clauses. This view has been referred to as being followed in the majority of states and is well summarized in *Fireman's Fund Insurance Co. v. Canal Insurance Co.,* 411 F. 2d 265 (5th Cir. 1969).

This opinion was by Judge Orie L. Phillips of the Tenth Circuit sitting by assignment with the Fifth Circuit. The facts in this case were that Canal Insurance Company had a policy on a truck. The truck owner drove it to an ice house platform and ordered ice. The ice company employees, while loading the ice, negligently dropped a block of ice on the truck owner causing extensive personal injuries. Fireman's Fund had issued a comprehensive liability policy to the ice company. When Canal refused to defend, Fireman's Fund paid out nearly $30,000 to settle the loss and brought this action to recover from Canal for that the ice company was an unnamed insured under the Canal policy pertaining to loading the vehicle. The court allowed recovery against Canal and the following is a summary of the decision:

(1) Loading and unloading coverage as an expansion of the term "use"; a more liberal concept of causation is imparted than "proximate cause" in its traditional legal sense.

(2) If the accidental injury arises out of the loading of the insured vehicle, persons engaged in such loading operations were using the vehicle within the meaning of that phrase of the coverage provision of such policy.

(3) Causal relationship between the accident and the use of the insured vehicle as a vehicle is not necessary.

(4) It is not necessary that either the insured vehicle itself or the driver thereof be involved in the accident.

(5) Loading begins when the object to be loaded leaves its original location and starts toward the insured vehicle, to be placed therein.

(6) If the bodily injuries were caused by accident and resulted from the manner in which the party loading the insured vehicle carried out an essential part of the loading operations, that is, if they were caused by what he did or failed to do in carrying out an essential part of the loading operations, the party doing the loading was using the insured vehicle and is an unnamed insured within the coverage of the policy, if such use thereof was with the consent of the named insured.

The holding that all persons, whether the named insured, his agent, or a third party, engaged in loading and unloading operations are covered by the vehicle's insurance policy under the "use" provision is amply supported by precedent from other jurisdictions.

In *Liberty Mutual Ins. Co. v. Truck Insurance Exch., supra,* a truck driver delivered a load of logs to a pond operated by U. S. Plywood, and through negligence of employees of U. S. Plywood, a log was caused to roll off the truck while it was being unloaded, and the truck driver, who was walking by, was injured. It was held that U. S. Plywood was an insured under the truck policy since it was engaged in an unloading of the truck and hence was a permissible user under the truck policy. The insurance carrier of the truck was held to be primarily liable. The same holding in a similar type case is found in *Travelers Insurance Co. v. American Fidelity & Cas. Co., supra.*

In the case of *St. Paul Mercury Insurance Company v. Huitt,* 336 F. 2d 37 (6th Cir. 1964), a ready-mix concrete truck took a load of concrete to a job site. A crane operator manipulated a bucket to the truck, received a bucket full of concrete and then manipulated the bucket to the building foundation where it was dumped into the foundation. During the course of unloading the truck and pouring concrete in this manner, the boom on the crane fell and injured a third person. It was held that the crane operator was an unnamed insured in the truck insurance policy as he was engaged in an unloading enterprise

and the truck insurance carrier was held primarily liable. A thorough review of the law is given in the majority and dissenting opinions.

In *Caribou Four Corners, Inc. v. Truck Insurance Exchange,* 443 F. 2d 796 (10th Cir. 1971), the question presented was whether an insurance company on a truck or an insurance company with general liability was primarily liable. The truck was being unloaded by employees of the consignee of a load of pipe. The consignee was using a crane in the unloading operation, and the crane operator caused the boom to strike an electric wire, thereby causing injury to the truck driver, who was also engaged in the unloading operation. It was held that the consignee was an additional insured under the truck policy since he engaged in an unloading operation.

In *State Automobile & Cas. Under. v. Casualty Under., Inc.,* 266 Minn. 536, 124 N.W. 2d 185 (1963), a truck driver was making a delivery to a restaurant. On arrival at the restaurant, he notified the owner that he had merchandise for delivery. The owner sent one of his employees to the basement to unlock a trapdoor in the sidewalk. It was customary for the trapdoor to be unlocked, and then the truckdriver would open the trapdoor from the outside. On this occasion, however, the employee not only unlocked the trapdoor but opened it from down below. At the time the truck driver was on the truck checking his invoices and getting the particular merchandise to be delivered ready to be taken off the truck. While thus engaged, a pedestrian fell in the hole and was injured. The question presented was whether the restaurant's general liability policy covered the loss or were the restaurant and the employee of the restaurant additional unnamed insureds under the truck insurance policy. In an opinion by Chief Justice Knutson it was held that the truck insurance policy covered and was primarily liable. It is stated in the opinion:

> "In construing an insurance contract, where the language is ambiguous or so uncertain of meaning as to require judicial construction, we seek to ascertain the intention of the parties. The paramount question in construing an insurance contract is: What hazards did the parties intend to cover? It is reasonable to assume here that the parties intended to cover all hazards involved in handling the merchandise from its initial loading until it

was unloaded. While the merchandise actually was not being lifted from the truck when the accident occurred, the truckdriver was performing an act incident to and a necessary part of the unloading process. No matter what conclusion we may come to as to the time when unloading ceases, we are convinced that the unloading had commenced when Ryan stopped his truck and began the necessary preparations for physically moving the merchandise.

\* \* \* \*

Nor should liability be destroyed because the trapdoor was opened by Robert Gorzycki instead of by Ryan, if opening of the trapdoor was a part of the process of unloading." *State Automobile & Cas. Under. v. Casualty Under., Inc.*, 266 Minn. 536, 538-39, 544, 124 N.W. 2d 185, 187, 190.

In the case of *Wagman v. American Fidelity & Casualty Co.*, 304 N.Y. 490, 109 N.E. 2d 592 (1952), the highest court of New York was confronted with this factual situation. A trucking company was engaged to transport a load of clothing merchandise from a Bond store in New York to its warehouse in another city. Two employees of the New York store rolled the garments out on movable racks from the store to the curb line. The driver of the truck did not get off the truck, but from a position inside the truck body reached down and lifted the garments from the rack into the truck where a helper arranged them. A third employee of the New York store was engaged on the sidewalk in counting and checking the clothes for inventory purposes and in supervising the general operation. This employee did not participate in the actual pushing or carrying of the garments. This checker employee started back into the store for the purpose of seeing about other merchandise to be shipped. When he turned to go back into the store, he struck a pedestrian causing the pedestrian to fall to the sidewalk and sustain injuries. The question presented was whether this employee was covered by the insurance policy on the truck. The court held that the automobile insurance policy was to be interpreted as covering the complete operation of making a pick up and that this particular accident and injury was within the coverage.

[2] A plethora of decisions could be cited, but we think that the accident in the case at bar arose out of the use of the

truck insured by Farm Bureau. Wayne Nitrogen, Inc., and its agent, Harris, were using the vehicle through participation in the loading process. It was certainly within the contemplation of the parties to the insurance contract that the tank truck, in order to be used, would have to be loaded and unloaded. Under the terms of the policy, anyone using the truck with permission of the named insured would be an additional insured. We hold that Wayne Nitrogen, Inc., and its employee, Harris, are, therefore, unnamed, additional insureds under the Farm Bureau policy. We adopt this view rather than the more narrow and restricted view of Ohio.

[3]    The appellee further argues, however, that even if Wayne Nitrogen, Inc., and Harris are additional insureds, the F and C policy on Wayne Nitrogen, Inc. is not excess insurance and must share liability on a pro rata basis. This argument is founded upon the alleged conflicting "other insurance" clauses in the two policies. The Farm Bureau policy provides that if the injury or damage is covered by other applicable and collectible insurance, then Farm Bureau shall not be liable for a greater proportion of the loss than its limit of liability bears to the total applicable limits of liability of all valid and collectible insurance. The F and C policy, however, provides that its insurance coverage shall be excess to any other valid and collectible insurance with respect to loss arising out of the use of any non-owned automobile. The Farm Bureau provision is known as a "pro rata" clause; the F and C provision, an "excess" clause.

Appellee cites several cases which have reasoned that when two or more insurance policies have conflicting "other insurance" clauses, there is no equitable way to choose the controlling clause, so that, they being repugnant, they are read out of the conflicting policies, and each company shares the liability proportionately. *Lamb-Weston, Inc. v. Oregon Automobile Insurance Co.,* 219 Ore. 110, 341 P. 2d 110 (1959); *Commercial U. Ins. Co. v. Universal Underwriters, Inc.,* 223 Tenn. 80, 442 S.W. 2d 614 (1969).

In the instant case we do not think the two clauses repugnant. The North Carolina Supreme Court in *Insurance Co. v. Insurance Co.,* 269 N.C. 341, 152 S.E. 2d 436 (1967), said at 346, 152 S.E. 2d at 440:

"The terms of another contract between different parties cannot affect the proper construction of the provisions

of an insurance policy. The existence of the second contract, whether an insurance policy or otherwise, may or may not be an event which sets in operation or shuts off the liability of the insurance company under its own policy. Whether it does or does not have such effect, first requires the construction of the policy to determine what event will set in operation or shut off the company's liability and, second, requires a construction of the other contract, or policy, to determine whether it constitutes such an event. A provision in a policy of insurance is not rendered invalid by the presence of a 'repugnant' provision in another policy of insurance issued by a different company to a different policy holder, but the other policy, by reason of its own terms, properly construed, may fall outside the class of events which the first policy declares to be exclusions from or limitations upon the liability of the company issuing the first policy."

The terms "prorate" and "excess" do not have, and were not meant by the insurers to have identical meanings. A construction which will give a fair meaning to both terms as used in the "other insurance" clauses is preferable to finding repugnancy. The scope of the Farm Bureau pro rata clause is for full liability to be prorated with other collectible insurance. The F & C excess clause provides that there is no other collectible insurance with which to prorate. Therefore the liability of the excess insurer, F and C, does not arise until the limits of the collectible insurance have been exceeded. This makes the Farm Bureau policy the primary one. *Consolidated Mut. Ins. Co. v. Bankers Ins. Co. of Pa.,* 244 Md. 392, 223 A. 2d 594 (1966) ; *Universal Under. Ins. Co. v. Dairyland Mut. Ins. Co.,* 102 Ariz. 518, 433 P. 2d 966 (1967) ; *Putnam v. New Amsterdam Casualty Co.,* 48 Ill. 2d 71, 269 N.E. 2d 97 (1970) ; *General Ins. Co. of America v. State Farm Ins. Co.,* 75 Wash. 2d 200, 449 P. 2d 391 (1969).

In *Insurance Co. v. Insurance Co.,* 277 N.C. 216, 176 S.E. 2d 751 (1970), the court held that where an excess clause relieved the plaintiff of the duty to defend an insured, the plaintiff could recover from the defendant primary insurer sums paid out for the defense of claims against the insured incurred because the defendant wrongfully refused to defend.

The result is that Farm Bureau will pay the entire loss to the extent of its limits and any balance remaining will be

the responsibility of F and C. In view of this holding it is not necessary to determine the relative liability of the truck owner and Wayne Nitrogen, Inc. or their agents as to whether one was the sole tort-feasor, a joint tort-feasor or whether one was primarily or secondarily liable.

Reversed.

Judges MORRIS and PARKER concur.