ANDRE LEONARD AND RENEE LEONARD v. NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY

No. 917SC153

(Filed 17 December 1991)

1. **Appeal and Error § 119 (NCI4th) — partial summary judgment — not immediately appealable**

  An order granting partial summary judgment for plaintiff on the issues of whether plaintiff is covered under his brother's automobile insurance policy issued by defendant and whether plaintiff is entitled to "stack" the limits of liability of underinsured motorist coverage under that policy did not affect a substantial right and was not immediately appealable where the alleged tortfeasor's liability for the accident and plaintiff's damages have not been determined.

  **Am Jur 2d, Appeal and Error § 104; Summary Judgment § 40.**

2. **Insurance § 69 (NCI3d) — underinsured motorist coverage — changing tire — not occupancy of vehicle**

  Plaintiff was not "occupying" his brother's insured van at the time of an accident and thus was not an "insured" under the brother's automobile insurance policy for purposes of underinsured motorist coverage where he was outside the van helping his brother change a flat tire when he was struck by another vehicle.

  **Am Jur 2d, Automobile Insurance §§ 312, 314, 322.**

LEONARD v. N.C. FARM BUREAU MUT. INS. CO.

[104 N.C. App. 665 (1991)]

3. **Insurance § 69 (NCI3d) — underinsured motorist coverage — changing tire — use of vehicle — person insured under statute**

Where plaintiff was riding to work as a passenger in his brother's van and was struck by another vehicle while outside the van helping his brother change a flat tire on the van, plaintiff was "using" the van both before and at the time of the accident and was thus a member of the second class of "persons insured" pursuant to N.C.G.S. § 20-279.21 for purposes of underinsured motorist coverage under his brother's automobile insurance policy.

**Am Jur 2d, Automobile Insurance §§ 311-314, 332.**

4. **Insurance § 69 (NCI3d) — underinsured motorist coverage — second class of persons insured — intrapolicy stacking**

N.C.G.S. § 20-279.21(b)(4) permits intrapolicy stacking of underinsured motorist coverages to determine an insurer's limit of liability when the injured person is a member of the second class of "persons insured" under N.C.G.S. § 20-279.21(b)(3).

**Am Jur 2d, Automobile Insurance §§ 326, 329.**

Judge WYNN concurring in part and dissenting in part.

Judge PARKER concurs in this concurring and dissenting opinion.

APPEAL by defendant from order entered 6 December 1990 in NASH County Superior Court by *Judge Leon Henderson, Jr.* Heard in the Court of Appeals 13 November 1991.

*Duffus & Coleman, by J. David Duffus, Jr., for plaintiff-appellee Andre Leonard.*

*No brief filed for plaintiff-appellee Renee Leonard.*

*Nichols, Caffrey, Hill, Evans & Murrelle, by Paul D. Coates and Tonola D. Brown, for defendant-appellant.*

GREENE, Judge.

Defendant appeals from an order entered 6 December 1990 granting partial summary judgment for the plaintiffs on the issues of whether Andre Leonard (plaintiff) is covered under his brother's automobile insurance policy issued by the defendant and whether

the plaintiff is entitled to "stack" the limits of liability of underinsured motorist (UIM) coverage under that policy.

On 20 February 1988, the defendant issued an automobile insurance policy to Jimmy Leonard (Leonard), the plaintiff's brother. The policy covered three vehicles and provided liability and UIM coverage for bodily injury in the amount of $50,000.00 per person and $100,000.00 per accident. In August, 1988, Leonard and the plaintiff worked for the Department of Sanitation in Raleigh, North Carolina. Leonard lived in Spring Hope, North Carolina, and the plaintiff lived somewhere nearby with his mother-in-law. To get to work in Raleigh, Leonard usually drove them both to work in his van, one of the three vehicles covered by his automobile insurance policy.

At approximately 5:30 a.m. on 11 August 1988, Leonard, the plaintiff, and several other people left Spring Hope to go to work in Raleigh. Leonard drove the van, and the plaintiff rode in the back seat. After driving along U.S. Highway 264 for about fifteen minutes, the left rear tire of the van went flat. Leonard drove the van onto the right shoulder of the road to change the tire. Because the shoulder of the road was not wide enough to park the van entirely off the road, Leonard parked the van so that the left front and rear tires remained on the white line of the paved portion of the shoulder of the road. He then turned on the emergency flashers, and he and the plaintiff exited the van to change the tire. After the plaintiff loosened the lug nuts, Leonard jacked up the van and removed the lug nuts. Leonard then asked the plaintiff to bring him the spare tire from the back of the van. The plaintiff got the tire for Leonard and began rolling it around the left side of the van. As he rolled the tire towards his brother, he was struck by a vehicle driven by Christopher Wilkerson (Wilkerson) and sustained severe and disabling injuries. He also incurred medical bills in excess of $53,000.00.

At the time of the accident, Wilkerson's vehicle was covered by an automobile insurance policy issued by Allstate Insurance Company with limits of liability of $25,000.00 per person and $50,000.00 per accident. On 12 December 1988, the plaintiff and his wife filed a personal injury action against Wilkerson. On 21 March 1990, the plaintiffs released their claims against Wilkerson in exchange for $25,000.00, the limit of liability under Wilkerson's automobile insurance policy, and voluntarily dismissed with prejudice their action against Wilkerson.

On 23 March 1990, the plaintiffs filed a complaint against the defendant seeking UIM coverage under Leonard's automobile insurance policy in an amount of $150,000.00, the aggregate of the three $50,000.00 coverages provided by the policy, less the $25,000.00 paid by Wilkerson's insurance carrier. The defendant filed an answer on 18 June 1990. The plaintiffs and the defendant made summary judgment motions, and on 6 December 1990, the trial court entered partial summary judgment for the plaintiffs on the issues of coverage and stacking and denied the defendant's motion.

[1] The record reflects and the defendant's counsel conceded at oral argument that Wilkerson's liability for the accident and the plaintiff's damages have not been determined. Therefore, we note that the trial court's partial summary judgment order from which the defendant appeals is an interlocutory order not affecting a substantial right. *Tridyn Indus. v. American Mut. Ins. Co.*, 296 N.C. 486, 491-92, 251 S.E.2d 443, 447-48 (1979); *Coleman v. Interstate Cas. Ins. Co.*, 84 N.C. App. 268, 270, 352 S.E.2d 249, 251 (1987). Furthermore, although the trial court certified in this multiple plaintiff action "that there is no just reason for delay in obtaining appellate review" of its order, the partial summary judgment order as to the plaintiff is not a final order and therefore not immediately appealable. *Tridyn*, 296 N.C. at 491, 251 S.E.2d at 447. In our discretion, however, we treat the purported appeal as a petition for certiorari and address its merits. N.C.R. App. P. 21(a)(1); N.C.G.S. § 7A-32(c) (1989); *Coleman*, 84 N.C. App. at 270, 352 S.E.2d at 251.

---

The issues are (I) whether the plaintiff (A) is an insured under Leonard's automobile insurance policy, and if not (B) is a "person insured" under N.C.G.S. § 20-279.21(b)(3) (1989); and (II) whether N.C.G.S. § 20-279.21(b)(4) (1989) permits intrapolicy stacking to determine an insurer's limit of liability where the injured person is a member of the second class of "persons insured" under N.C.G.S. § 20-279.21(b)(3).

I

(A) POLICY

[2] Under the UM/UIM provision of the automobile insurance policy, the defendant contracted to "pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle [and an underinsured motor vehicle]

LEONARD v. N.C. FARM BUREAU MUT. INS. CO.

[104 N.C. App. 665 (1991)]

because of . . . [b]odily injury sustained by an insured and caused by an accident . . . ." Furthermore, "[t]he owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the" underinsured motor vehicle. The defendant does not deny that Wilkerson's vehicle was an underinsured motor vehicle, nor does it deny that Wilkerson's alleged liability for the plaintiff's injuries arose out of Wilkerson's use of his vehicle. The defendant argues, however, that the plaintiff is not an "insured" person under the policy and therefore is not entitled to the policy's UIM coverage.

With regard to UM/UIM coverage, the policy defines an "insured" as being the named insured shown in the declarations, that person's spouse if a resident of the named insured's household, any family member if a resident of the named insured's household, and "[a]ny other person occupying . . . your covered auto . . . or . . . any other auto operated by you." "Your covered auto" generally means "[a]ny vehicle shown in the Declarations." Here, the plaintiff was not a named insured, that person's spouse, or a family member residing in the named insured's household. Accordingly, the only way the plaintiff can be classified as an "insured" under the policy is if he was "occupying" Leonard's van, a vehicle shown in the declarations. The policy defines "occupying" as meaning "in; upon; getting in, on, out or off." When the plaintiff was struck by Wilkerson's vehicle, the plaintiff was doing none of these things. To the contrary, he was outside the van helping his brother change a flat tire. Accordingly, because the plaintiff was not "occupying" the vehicle at the time of the accident, he is not an "insured" under the policy for purposes of UIM coverage. *Cf. Jarvis v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co.*, 244 N.C. 691, 692, 94 S.E.2d 843, 844 (1956) (deceased was not "entering" a truck at time of accident for purposes of medical payments provision of automobile insurance policy); *Lautenschleger v. Royal Indem. Co.*, 15 N.C. App. 579, 580, 190 S.E.2d 406, 407, *cert. denied*, 282 N.C. 153, 191 S.E.2d 602 (1972) (plaintiff was not "occupying" the insured vehicle at time of accident for purposes of medical payments provision of automobile insurance policy).

(B) STATUTE

[3] Although the plaintiff is not an "insured" under the applicable policy provisions for UIM coverage, the plaintiff may nonetheless fall into the category of "persons insured" under N.C.G.S.

§ 20-279.21(b)(3) for purposes of UIM coverage. *See Smith v. Nation-wide Mut. Ins. Co.*, 328 N.C. 139, 143, 400 S.E.2d 44, 47, *reh'g denied*, 328 N.C. 577, 403 S.E.2d 514 (1991) (because N.C.G.S. § 20-279.21(b)(4) incorporates the definition of "persons insured" under N.C.G.S. § 20-279.21(b)(3), N.C.G.S. § 20-279.21(b)(3) defines "persons insured" for UIM coverage). This is true because our courts have consistently held

> that when a statute is applicable to the terms of a policy of insurance, the provisions of that statute become part of the terms of the policy to the same extent as if they were written in it, and if the terms of the policy conflict with the statute, the provisions of the statute will prevail.

*Sutton v. Aetna Cas. & Sur. Co.*, 325 N.C. 259, 263, 382 S.E.2d 759, 762, *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989).

For purposes of UIM coverage, N.C.G.S. § 20-279.21(b)(3) defines "persons insured" as follows:

> the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies and a guest in such motor vehicle to which the policy applies or the personal representative of any of the above or any other person or persons in lawful possession of such motor vehicle.

Our courts have repeatedly stated that this statute essentially "establishes two 'classes' of 'persons insured': (1) the named insured and, while resident of the same household, the spouse of the named insured and relatives of either and (2) any person who uses with the consent, express or implied, of the named insured, the insured vehicle, and a guest in such vehicle." *Crowder v. N.C. Farm Bureau Mut. Ins. Co.*, 79 N.C. App. 551, 554, 340 S.E.2d 127, 129, *disc. rev. denied*, 316 N.C. 731, 345 S.E.2d 387 (1986); *see also Sproles v. Greene*, 329 N.C. 603, 608, 407 S.E.2d 497, 500 (1991); *Smith*, 328 N.C. at 143, 400 S.E.2d at 47. Although "[m]embers of the first class are 'persons insured' even where the insured vehicle is not involved in the insured's injuries," members of the second class are "persons insured" "only when the insured vehicle *is* involved in the insured's injuries." *Smith*, 328 N.C. at 143, 400 S.E.2d at 47 (emphasis added). Here, the plaintiff and the defendant

agree that the plaintiff is not a member of the first class of "persons insured." They disagree, however, as to whether the plaintiff is a member of the second class. Because the van, an insured vehicle under the policy, was involved in the plaintiff's injuries, the plaintiff qualifies as a person insured under the second class of "persons insured" if he was "using" the van with Leonard's consent *or* he was a guest in the van at the time of the accident.

With regard to whether the plaintiff was "using" the van as that term is used in N.C.G.S. § 20-279.21(b)(3), we must examine what the legislature intended by its choice of that term. *Electric Supply Co. v. Swain Elec. Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991) (primary task in statutory construction is to ensure legislative purpose is accomplished). "Where words in a statute have not acquired a technical meaning, they must be construed in accordance with their common and ordinary meaning." *State v. Coker*, 312 N.C. 432, 435, 323 S.E.2d 343, 346 (1984); *Lafayette Transp. Serv., Inc. v. County of Robeson*, 283 N.C. 494, 500, 196 S.E.2d 770, 774 (1973) (presume that legislature intended words of statute to be given ordinary meaning). Furthermore, we must liberally construe the verb "use" to ensure that the beneficial purpose of the Financial Responsibility Act will be accomplished. *Sutton*, 325 N.C. at 265, 382 S.E.2d at 763 (legislature intended "to compensate the innocent victims of financially irresponsible motorists").

The ordinary meaning of the verb "use" is "to put into action or service[,] . . . to carry out a purpose or action by means of[, or] . . . [to] make instrumental to an end or process . . . ." Webster's Third New International Dictionary 2523-24 (1968). When compared to its synonyms such as "apply," "avail," "employ," and "utilize," the verb "use" "is general and indicates any putting to service of a thing, . . . [usually] for an intended or fit purpose . . . ." *Id.* at 2524. Given this ordinary meaning of the verb "use," we conclude that the plaintiff was using the van with Leonard's consent both before and at the time of the accident.

In *Whisnant v. Aetna Cas. & Sur. Ins. Co.*, 264 N.C. 303, 305, 141 S.E.2d 502, 503 (1965), a motor vehicle struck the plaintiff as he was trying to push onto the shoulder of the road the insured vehicle he had been driving before it stopped working. Our Supreme Court held that for purposes of a medical payments provision in an automobile insurance policy taken out by the owner of the insured vehicle, the plaintiff was "using" the vehicle at the time

he was injured. *Id.* at 308, 141 S.E.2d at 506. In reaching its decision, our Supreme Court recognized that a person "uses" a motor vehicle when he purposefully uses it as his "means of transportation" to a destination. *Id.* at 308, 141 S.E.2d at 505. Furthermore, in other cases not involving UM or UIM coverage, this Court has recognized broader meanings of the word "use." This Court has held that a person "uses" a motor vehicle when loading and unloading it even when the person is not the driver, *Fidelity & Cas. Co. v. N.C. Farm Bureau Mut. Ins. Co.*, 16 N.C. App. 194, 199, 192 S.E.2d 113, 118, *cert. denied*, 282 N.C. 425, 192 S.E.2d 840 (1972), and in another case, that a hunter "uses" a motor vehicle while hunting when he reaches into it to get a rifle. *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 78 N.C. App. 542, 548, 337 S.E.2d 866, 869 (1985), *aff'd*, 318 N.C. 534, 350 S.E.2d 66 (1986). Accordingly, because the plaintiff was traveling in the van before the accident with Leonard's consent, and because the plaintiff was purposefully using the van as his means of transportation to his job, the plaintiff was "using" his brother's van before the accident as that term is used in N.C.G.S. § 20-279.21(b)(3).

The plaintiff was also "using" the van at the time Wilkerson's vehicle struck him. At the time of the accident, the plaintiff was helping Leonard change the van's flat tire. In *Whisnant*, our Supreme Court recognized that a person "uses" a motor vehicle when he changes a flat tire during a trip. *Id.* at 308, 141 S.E.2d at 505. This is true because the changing of a tire during a trip is

> 'just as much a part of the use of the automobile for that journey as stopping to replenish the gasoline or oil, or for the change of a traffic light, or to remove ice, snow, sleet, or mist from the windshield. By such acts, the journey would not be abandoned. Such adjustments are a part of the use of the automobile — as much as the manipulation of the mechanism by the operator.'

*Id.* (citation omitted). Accordingly, though not the driver of the van, the plaintiff was nonetheless "using" the van both before and at the time of the accident pursuant to N.C.G.S. § 20-279.21(b)(3). This construction of the verb "use" is consistent with its ordinary meaning and the legislature's purpose in seeking "to compensate the innocent victims of financially irresponsible motorists." *Sutton*, 325 N.C. at 265, 382 S.E.2d at 763.

LEONARD v. N.C. FARM BUREAU MUT. INS. CO.

[104 N.C. App. 665 (1991)]

The defendant argues that this construction of the verb "use" will render meaningless the "guest in such motor vehicle" provision of N.C.G.S. § 20-279.21(b)(3). We disagree. Without attempting to define who qualifies as a "guest in such motor vehicle," we believe that the legislature intended this category of the second class of "persons insured" to include those people riding in an insured vehicle at the invitation of the driver without any particular purpose. Furthermore, although the defendant would have this Court adopt the position that such a person must actually be "in" the insured vehicle at the time of the accident to be considered a member of the "guest" category, we do not decide the issue. We note, however, that such a narrow construction would appear to violate the remedial purpose of the statute. *Sutton*, 325 N.C. at 265, 382 S.E.2d at 763.

In summary, we hold that the plaintiff is a "person insured" under N.C.G.S. § 20-279.21(b)(3) for purposes of UIM coverage.

II

[4] The defendant argues that even if the plaintiff is properly found to be a "person insured" under N.C.G.S. § 20-279.21(b)(3), both the automobile insurance policy and N.C.G.S. § 20-279.21(b)(4) prohibit the plaintiff from stacking the three $50,000.00 UIM coverages to determine the defendant's limit of liability. At oral argument the plaintiff conceded, and we agree, that the automobile insurance policy at issue prevents the stacking of multiple coverages in this case. *See Harris v. Nationwide Mut. Ins. Co.*, 103 N.C. App. 101, 108, 404 S.E.2d 499, 503-04, *disc. rev. allowed on additional issues*, 329 N.C. 788, 408 S.E.2d 521 (1991) (Greene, J., dissenting). Therefore, we must consider whether N.C.G.S. § 20-279.21(b)(4) permits the plaintiff to intrapolicy stack the UIM coverages to determine the defendant's limit of liability.

Consistent with my dissents in *Manning v. Tripp*, 104 N.C. App. 601, 607, 410 S.E.2d 401, 404 (1991), *Amos v. N.C. Farm Bureau Mut. Ins. Co.*, 103 N.C. App. 629, 632, 406 S.E.2d 652, 653, *disc. rev. allowed*, 330 N.C. 193, 412 S.E.2d 52 (1991), and *Harris*, 103 N.C. App. at 109, 404 S.E.2d at 504, I conclude that only "owners" may stack intrapolicy coverages under N.C.G.S. § 20-279.21(b)(4). Accordingly, I would reverse the trial court's order allowing the plaintiff, a non-owner, to stack the three $50,000.00 UIM coverages contained in Leonard's automobile insurance policy. As is apparent from the opinion of Judge Wynn that follows, and

the concurrence in it by Judge Parker, my opinion on the issue of stacking is a dissent, and Judge Wynn's opinion is the majority opinion.

In summary, on the issue of coverage, the trial court's order is affirmed. On the issue of stacking, although I would reverse the trial court's order, the majority of this panel affirms the trial court's order.

Affirmed.

Judges PARKER and WYNN concur in the above opinion except on the issue of stacking, and as to that issue Judge PARKER concurs in the following opinion of Judge WYNN.

Judge WYNN concurring in part and dissenting in part.

I agree with the majority on Section I. However, I respectfully dissent from Section II of Judge Greene's opinion in which he concludes that N.C. Gen. Stat. § 20-279.21(b)(4) (1989) does not permit a member of the second class of "persons insured" to intrapolicy stack UIM coverages to determine an insurer's limit of liability.

In *Crowder v. N.C. Farm Bureau Mut. Ins. Co.*, 79 N.C. App. 551, 340 S.E.2d 127, *disc. review denied*, 316 N.C. 731, 345 S.E.2d 387 (1986), this Court explained the term "person insured,"

.In essence, N.C. Gen. Stat. 20-279.21(b)(3) establishes two "classes" of "persons insured": (1) the named insured and, while resident of the same household, the spouse of the named insured and relatives of either and (2) any person who uses with the consent, express or implied, of the named insured, the insured vehicle, and a guest in such vehicle.

*Id.* at 554, 340 S.E.2d at 129-30. A member of the second class is a person insured "only when the insured vehicle is involved in the insured's injuries." *Smith v. Nationwide Mut. Ins. Co.*, 328 N.C. 139, 143, 400 S.E.2d 44, 47, *reh'g denied*, 328 N.C. 577, 403 S.E.2d 514 (1991). The statute and cases merely define and develop the "person insured"; they do not distinguish between the two classes for stacking purposes.

In *Harris v. Nationwide Mut. Ins. Co.*, 103 N.C. App. 101, 103, 404 S.E.2d 499, 501 (1991), this Court stated that "the benefits

contemplated under the applicable statutory provisions in N.C. Gen. Stat. § 20-279.21(b)(4) flow to the *insured injured party.*" This Court relied on this language in *Manning v. Tripp,* 104 N.C. App. 601, 410 S.E.2d 401 (1991), and held that a first class "person insured," who is not the owner of a vehicle, is entitled to aggregate the limits of liability for UIM coverage. In my opinion, these recent cases establish that stacking of UIM coverage is allowable if an injured party qualifies as a "person insured" under N.C. Gen. Stat. § 20-279.21(b)(3). *See also Nationwide Mut. Ins. Co. v. Silverman,* 104 N.C. App. 783, 411 S.E.2d 153 (1991).