An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-902
NORTH CAROLINA COURT OF APPEALS

Filed:  4 March 2014

MICHAEL I. CINOMAN, M.D., AND
MEDICAL MUTUAL INSURANCE
COMPANY OF NORTH CAROLINA,
     Plaintiffs,

     v.                                     Wake County
                                            No. 09 CVS 3164

THE UNIVERSITY OF NORTH
CAROLINA; THE UNIVERSITY OF
NORTH CAROLINA HEALTHCARE
SYSTEM, D/B/A THE UNIVERSITY OF
NORTH CAROLINA HOSPITALS AT
CHAPEL HILL; THE UNIVERSITY OF
NORTH CAROLINA, D/B/A THE
SCHOOL OF MEDICINE OF THE
UNIVERSITY OF NORTH CAROLINA AT
CHAPEL HILL; THE UNIVERSITY OF
NORTH CAROLINA, D/B/A THE
UNIVERSITY OF NORTH CAROLINA
LIABILITY INSURANCE TRUST FUND;
WILLIAM L. ROPER, IN HIS
CAPACITY AS DEAN OF THE SCHOOL
OF MEDICINE OF THE UNIVERSITY
OF NORTH CAROLINA AT CHAPEL
HILL; BRIAN GOLDSTEIN IN HIS
CAPACITY AS CHAIRMAN OF THE
UNIVERSITY OF NORTH CAROLINA
LIABILITY INSURANCE TRUST FUND
COUNCIL; THOMAS M. STERN, AS
GUARDIAN AD LITEM FOR ARMANI
WAKEFALL; AND WAKEMED,
     Defendants.


     Appeal by plaintiffs from order entered 19 April 2013 by

Judge Carl R. Fox in Wake County Superior Court.  Heard in the Court of Appeals 6 January 2014.

> *Manning, Fulton & Skinner, P.A., by Michael T. Medford and J. Whitfield Gibson, for plaintiffs-appellants.*
>
> *Hedrick Gardner Kincheloe & Garofalo, LLP, by David N. Allen, J. Douglas Grimes, and M. Duane Jones, for the University of North Carolina defendants-appellees.*
>
> *Tin, Fulton, Walker & Owen, by William Simpson, and Ferguson, Chambers & Sumter, P.A., by James E. Ferguson II, for defendant-appellee Thomas M. Stern, as Guardian ad litem for Armani Wakefall.*

MARTIN, Chief Judge.

Plaintiffs Michael I. Cinoman, M.D. and Medical Mutual Insurance Company of North Carolina ("MMIC") appeal from an order granting UNC defendants[1] motion to stay this declaratory action pending a final resolution of the underlying malpractice action.  For the reasons stated herein, we reverse.

In February 1999, Dr. Cinoman served as a temporary attending physician for full-time rotations in the University of North Carolina Hospitals at Chapel Hill Pediatric Intensive Care Unit ("UNC-PICU") as part of an agreement to assist UNC defendants with a staffing shortage in the UNC-PICU.  On 21 June 2007, Thomas M. Stern, as guardian ad litem for Armani Wakefall,

---

[1] UNC defendants are all defendants except for Thomas M. Stern, who is a nominal defendant due to his interest in the insurance coverage, and WakeMed, which is not a party to this appeal.

initiated a medical malpractice action against Dr. Cinoman and others for damages allegedly incurred by Wakefall as a result of negligent medical treatment at the UNC-PICU in February 1999 ("underlying malpractice action").

Dr. Cinoman is insured under a medical malpractice insurance policy issued by MMIC, which has treated its coverage as broad enough to cover the claims against Dr. Cinoman in the underlying malpractice action. The University of North Carolina Liability Insurance Trust Fund ("UNC-LITF"), which provides coverage for claims against employees and agents of UNC defendants, maintained that Dr. Cinoman is not entitled to coverage under the UNC-LITF because he was not a full-time employee of UNC defendants at the time of the alleged negligence. In the absence of coverage by the UNC-LITF, the damages demanded in the underlying malpractice action allegedly exceed Dr. Cinoman's medical malpractice insurance coverage.

On 17 February 2009, plaintiffs filed this declaratory judgment action to determine whether Dr. Cinoman is entitled to coverage under the UNC-LITF, in addition to his coverage under the MMIC policy, and the policies' relative order of priority. Plaintiffs and UNC defendants moved for summary judgment, and the trial court granted summary judgment in favor of UNC defendants on 15 April 2010. On appeal, this Court reversed the

summary judgment order, concluding that there were questions of material fact which made summary judgment for either party inappropriate, and remanded the case for trial. *Cinoman v. Univ. of N.C.*, __ N.C. App. __, __, 718 S.E.2d 424 (2011) (unpublished), *disc. review denied*, 365 N.C. 573, 724 S.E.2d 527 (2012).

On 28 February 2013, UNC defendants moved to stay this action pending the final resolution of the underlying malpractice action. In an order entered on 19 April 2013, the trial court granted the motion to stay, finding that, while an actual controversy exists as to the UNC-LITF's duty to defend, no such controversy exists as to the UNC-LITF's duty to indemnify until the underlying malpractice action is finally resolved. Plaintiffs appeal from the order pursuant to N.C.G.S. §§ 1-277 and 7A-27. UNC defendants move to dismiss the appeal as interlocutory.

———————————————

We must first determine whether the trial court's interlocutory order granting the stay is immediately appealable. Although interlocutory orders are not generally appealable, immediate appeal is available under N.C.G.S. §§ 1-277 and 7A-27 from an interlocutory order which affects a substantial right. *Sharpe v. Worland*, 351 N.C. 159, 161-62, 522 S.E.2d 577, 578-79

(1999), *on remand*, 137 N.C. App. 82, 527 S.E.2d 75 (2000). Where there is a pending suit or claim, an interlocutory order on the issue of whether an insurer has a duty to defend in the underlying action "affects a substantial right that might be lost absent immediate appeal." *Lambe Realty Inv., Inc. v. Allstate Ins. Co.*, 137 N.C. App. 1, 4, 527 S.E.2d 328, 331 (2000). We therefore conclude that the appeal is properly before us.

A survey of the relevant case law indicates that our review on appeal of an order granting a stay is abuse of discretion. *See Watters v. Parrish*, 252 N.C. 787, 791, 115 S.E.2d 1, 4 (1960) ("Whether one lawsuit will be held in abeyance to abide the outcome of another rests in the sound discretion of the trial judge, and his action will not be disturbed on appeal, unless the discretion has been abused."); *see also Lawyers Mut. Liab. Ins. Co. of N.C. v. Nexsen Pruet Jacobs & Pollard*, 112 N.C. App. 353, 356, 435 S.E.2d 571, 573 (1993) (concluding that order staying proceedings in North Carolina to permit trial of parallel action in another state is reviewed for abuse of discretion and declining to adopt a *de novo* standard of review); *Home Indem. Co. v. Hoechst-Celanese Corp.*, 99 N.C. App. 322, 325, 393 S.E.2d 118, 120 (holding that order staying litigation pending final disposition of similar action in federal court "is

a matter within the sound discretion of the trial judge and will not be disturbed on appeal absent an abuse of that discretion"), *appeal dismissed and disc. review denied*, 327 N.C. 428, 396 S.E.2d 611 (1990). "'A [trial] court by definition abuses its discretion when it makes an error of law.'" *In re A.F.*, __ N.C. App. __, __, 752 S.E.2d 245, 248 (2013) (quoting *Koon v. United States*, 518 U.S. 81, 100, 135 L. Ed. 2d 392, 414 (1996)).

On appeal, plaintiffs contend that the trial court erred in granting the stay based on its determination that no actual controversy exists as to the UNC-LITF's duty to indemnify until the underlying malpractice action is finally resolved. We agree.

"An actual controversy between adverse parties is a jurisdictional prerequisite for a declaratory judgment." *Newton v. Ohio Cas. Ins. Co.*, 91 N.C. App. 421, 422, 371 S.E.2d 782, 783 (1988). An actual controversy exists when an insurer seeks a determination that primary coverage is not provided under its policy and is instead provided under policies issued by other insurers. *See Gov't Emps. Ins. Co. v. New S. Ins. Co.*, 119 N.C. App. 700, 704, 459 S.E.2d 817, 819, *disc. review denied*, 341 N.C. 648, 462 S.E.2d 510 (1995). No such controversy exists, however, in a declaratory judgment action seeking to establish coverage provided under an excess insurance policy

where the underlying liability action has not yet been resolved. *See N.C. Farm Bureau Mut. Ins. Co. v. Warren*, 89 N.C. App. 148, 150, 365 S.E.2d 216, 217-18, *disc. review denied*, 322 N.C. 481, 370 S.E.2d 226 (1988), *appeal after remand*, 94 N.C. App. 591, 380 S.E.2d 790 (1989).

When more than one insurance policy affords coverage for a loss, the "other insurance" clauses in the competing policies must be examined to determine which policy provides primary coverage and which policy provides excess coverage. *Hlasnick v. Federated Mut. Ins. Co.*, 136 N.C. App. 320, 328, 524 S.E.2d 386, 391, *aff'd in part and disc. review improvidently allowed in part*, 353 N.C. 240, 539 S.E.2d 274 (2000). An excess clause is a type of "other insurance" clause which "generally provides that if other valid and collectible insurance covers the occurrence in question, the 'excess' policy will provide coverage only for liability above the maximum coverage of the primary policy or policies." *Horace Mann Ins. Co. v. Cont'l Cas. Co.*, 54 N.C. App. 551, 555, 284 S.E.2d 211, 213 (1981) (internal quotation marks omitted). An excess clause is distinguishable from a pro rata "other insurance" clause. *See Fid. & Cas. Co. of N.Y. v. N.C. Farm Bureau Mut. Ins. Co.* (*Fidelity*), 16 N.C. App. 194, 203-04, 192 S.E.2d 113, 120-21, *cert. denied*, 282 N.C. 425, 192 S.E.2d 840 (1972) ("The terms

'prorate' and 'excess' do not have, and were not meant by the insurers to have identical meanings."). In *Fidelity*, this Court differentiated a pro rata clause in one policy from an excess clause in another policy:

> The Farm Bureau policy provides that if the injury or damage is covered by other applicable and collectible insurance, then Farm Bureau shall not be liable for a greater proportion of the loss than its limit of liability bears to the total applicable limits of liability of all valid and collectible insurance. The F and C policy, however, provides that its insurance coverage shall be excess to any other valid and collectible insurance with respect to loss arising out of the use of any non-owned automobile. The Farm Bureau provision is known as a "pro rata" clause; the F and C provision, an "excess" clause.

*Id.* at 203, 192 S.E.2d at 120-21.

As a general rule, where a pro rata clause in one policy competes with an excess clause in another policy, the policy with the pro rata clause provides primary coverage, and the policy with the excess clause provides secondary coverage which will only be triggered if the limits of the policy containing the pro rata clause are first exhausted. *See id.* at 204, 192 S.E.2d at 121. Furthermore, where a pro rata clause in one insurance policy competes with a pro rata clause in another policy, each insurer has primary but concurrent liability for a proportionate amount of the loss. *See* 44A Am. Jur. 2d *Insurance*

§ 1752 (2013). Accordingly, an actual controversy exists in an action to determine the liability of an insurer under its policy where the policy contains a pro rata clause and the other applicable policy contains either an excess clause or a pro rata clause.

A study of the "other insurance" clause in the UNC-LITF policy leads us to conclude that the trial court erred in determining that no actual controversy exists as to the UNC-LITF's duty to indemnify until the underlying malpractice action is finally resolved. No actual controversy would exist as to the UNC-LITF's duty to indemnify if the coverage provided under the UNC-LITF policy is excess or triggered only after exhaustion of the MMIC policy limits. *See Warren*, 89 N.C. App. at 150, 365 S.E.2d at 217-18. The "other insurance" clause in the UNC-LITF policy, however, provides:

> When this agreement and other collectible insurance both apply to a loss on the same basis, whether primary, excess or contingent, the Trust Fund shall not be liable under this agreement for a greater proportion of the loss than that stated in the applicable contribution provision below:
>
> A. Contribution by Equal Shares. If all such other valid and collectible insurance provides for contribution by equal shares, the Trust Fund shall not be liable for a greater proportion of such loss than would be payable if each insurance company contributes an equal share until the share of each company equals the lowest applicable

limit of liability under any one policy or the full amount of the loss is paid. With respect to any amount of loss not so paid, the remaining companies shall continue to contribute equal shares of the remaining amount of the loss until each such company has paid its limit in full or the full amount of the loss is paid.

B. Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, the Trust Fund shall not be liable for a greater proportion of such loss than the applicable limit of liability under this agreement for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

Nothing in this provision indicates that the UNC-LITF's liability arises only after the limits of other collectible insurance have been exhausted. Rather, the provision provides that the UNC-LITF shares liability with other collectible policies according to their respective policy limits. Therefore, by its terms, the UNC-LITF "other insurance" clause is a pro rata clause, not an excess clause. *See Fidelity*, 16 N.C. App. at 203, 192 S.E.2d at 120–21.

Regardless of the terms of the MMIC policy,[2] the UNC-LITF policy provides primary coverage because the UNC-LITF policy

---

[2] Although the MMIC policy is not included in the record on appeal, a review of that policy is not necessary because the UNC-LITF policy contains a pro rata "other insurance" clause. That is, regardless of whether the MMIC policy contains an excess clause or a pro rata clause, the UNC-LITF policy provides primary coverage.

contains a pro rata "other insurance" clause. Assuming, *arguendo*, that the MMIC policy contains an excess clause, then the UNC-LITF policy provides primary coverage. *See id.* at 204, 192 S.E.2d at 121. If, on the other hand, the MMIC policy contains a pro rata clause, then the UNC-LITF and MMIC share liability on a pro rata basis according to their respective policy limits and, for that reason, each policy provides primary but concurrent coverage. *See* 44A Am. Jur. 2d *Insurance* § 1752. Therefore, because the UNC-LITF policy provides primary coverage, an actual controversy exists as to the UNC-LITF's duty to indemnify, and the trial court erred in granting the stay based on its determination that no such controversy exists pending a final resolution in the underlying malpractice action.

Reversed.

Judges ERVIN and McCULLOUGH concur.

Report per Rule 30(e).