NATIONWIDE MUTUAL INSURANCE COMPANY, AND NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, PLAINTIFFS v. ARTIE DAVIS, STEVE DAVIS, DONALD BUMGARDNER, GUARDIAN AD LITEM FOR TIFFANY DIANE MATTHEWS, AN INFANT, AND KENNETH MATTHEWS, DEFENDANTS

No. 9410SC632

(Filed 18 April 1995)

1. **Insurance § 1155 (NCI4th)— automobile policy—child struck after leaving vehicle—vehicle in use**

An insured's van was in use at the time her granddaughter was struck by a truck after leaving the van and an auto policy providing coverage for ownership, maintenance, or use provided coverage here where the insured was purposefully using the van as a means of transportation to her destination, a Superette; the van was instrumental in the trip to the Superette where the accident happened; and there was a causal connection between the

van and the accident in that the child had to cross a roadway to reach the Superette from where the van was parked.

**Am Jur 2d, Insurance § 631.**

**2. Insurance § 822 (NCI4th)— homeowner's policy—child struck after leaving vehicle—automobile exclusion not applicable**

A homeowner's policy provided coverage for the insured's granddaughter's injuries suffered after she had left the insured's van, where the use of the van was not the sole proximate cause of the accident. A concurrent cause was the grandmother's negligent supervision.

**Am Jur 2d, Insurance § 727.**

Appeal by plaintiffs from order and judgment entered 5 May 1994 by Judge Henry W. Hight, Jr. in Wake County Superior Court. Heard in the Court of Appeals 2 March 1995.

*Bailey & Dixon, L.L.P., by David S. Coats, for plaintiffs-appellants.*

*Tim L. Harris & Associates, by Jerry N. Ragan, for defendants-appellees.*

WALKER, Judge.

In this action plaintiffs seek a declaration of the rights of plaintiffs and defendants under two insurance policies. Specifically, plaintiffs seek a declaration that one but not both of the policies provides coverage for an accident that occurred on 15 August 1990.

On 26 August 1993, plaintiffs filed a motion for judgment on the pleadings pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(c). On 18 October 1993, defendants filed a corresponding motion. Thereafter, the court entered an order denying plaintiffs' motion for judgment on the pleadings and granting defendants' corresponding motion.

The parties stipulated to the following pertinent facts: On 15 August 1990, six-year-old Tiffany Diane Matthews, a pedestrian, was struck by a truck operated by Michael Sain. Immediately before the accident, Tiffany had been a passenger in a van driven by defendant Artie Davis, her grandmother. Ms. Davis had parked the van near the Cat Square Superette and turned off the motor. Ms. Davis exited the

van and started walking toward the Superette. Tiffany then called to Ms. Davis and asked her if she could come in and get some ice cream. When Ms. Davis told her that she could, Tiffany got out of the passenger side of the van, walked around the van, and walked into the one-lane roadway separating the van and the store. Tiffany was then struck by the truck operated by Mr. Sain.

Tiffany and her father, defendant Kenneth Matthews, filed an action alleging negligence and seeking damages from Ms. Davis, Mr. Sain, and Sain & Sain Trucking Company (the tort action). At the time of the accident, Mr. Davis maintained a motor vehicle liability policy issued by Nationwide (the auto policy) which provided liability coverage in the amount of $100,000 per person/$300,000 per accident. Mr. Davis also maintained a homeowner's insurance policy issued by Nationwide Fire (the homeowner's policy) which provided personal liability coverage in the amount of $100,000 for each occurrence.

The tort action was settled on 3 December 1992 when Tiffany's guardian ad litem Donald Bumgardner, Mr. Matthews, Ms. Davis, Mr. Sain, Nationwide, and Nationwide Fire entered into a consent judgment approving settlement. Pursuant to the parties' agreement, the claim against Mr. Sain was settled for $25,000; the claim against Ms. Davis was settled for $150,000 and Ms. Davis was released; $100,000 was paid to the plaintiffs by Nationwide; and it was stipulated that the instant action would determine whether there was coverage under both policies.

The issue to be determined is whether the auto policy, the homeowner's policy, both policies, or neither policy provide(s) coverage for the injuries and damages sustained by Tiffany in the accident. If both policies provide coverage, Nationwide and Nationwide Fire would be obligated to pay an additional $50,000 to the plaintiffs in the tort action. If only one or neither of the policies provides coverage, the plaintiffs in the tort action would be limited to the $100,000 already received from Nationwide for the claim against Ms. Davis.

We note at the outset that each insurance policy is a separate contract for which Mr. Davis has paid a separate premium. As such, each contract "must be interpreted in accordance with its own terms and using the applicable rules of construction. . . ." *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 547, 350 S.E.2d 66, 74 (1986). We therefore must look at each policy separately to determine whether it provides coverage for the accident.

**[1]** We first examine the auto policy, keeping in mind the rule of construction that "provisions of insurance policies and compulsory insurance statutes which extend coverage must be construed liberally so as to provide coverage, whenever possible by reasonable construction." *State Capital, supra,* at 538, 350 S.E.2d at 68.

The Davis' auto policy provides liability coverage to Ms. Davis "for the ownership, maintenance or use" of the vehicle. Under the facts of this case, the issue is whether at the time of the accident the van was in "use." Plaintiffs contend that since Ms. Davis was not driving the van or otherwise operating it at the time of the accident, the van was not in "use" and there is no coverage under the policy. However, North Carolina courts have recognized that liberally construed, the term "use" may refer to more than the actual driving or operation of a vehicle. For example, in *Whisnant v. Insurance Co.,* 264 N.C. 303, 141 S.E.2d 502 (1965), plaintiff was struck by a passing car as he attempted to push the disabled vehicle he had been driving onto the shoulder of the road. *Id.* at 308, 141 S.E.2d at 506. Our Supreme Court held that for purposes of a medical payments provision in an automobile insurance policy maintained by the owner of the disabled vehicle, the plaintiff was "using" the vehicle at the time he was injured. *Id.* The Court recognized that a person "uses" a vehicle when he uses it for the purpose of transportation to a destination. *Id.* at 308, 141 S.E.2d at 505 (citing with approval *Madden v. Farm Bureau Mut. Auto. Ins. Co.,* 79 N.E.2d 586 (Ohio App. 1948)).

In *Leonard v. N.C. Farm Bureau Mut. Ins. Co.,* 104 N.C. App. 665, 411 S.E.2d 178 (1991), *rev'd on other grounds,* 332 N.C. 656, 423 S.E.2d 71 (1992), involving the term "use" as it related to an underinsured motorist provision, this Court adopted the ordinary meaning of the word "use"—" 'to put into action or service[,] . . . to carry out a purpose or action by means of[, or] . . . [to] make instrumental to an end or process. . . .' " *Id.* at 671, 411 S.E.2d at 181-82 (*quoting Webster's Third New International Dictionary* 2523-24 (1968)). The Court held that the plaintiff, who was injured while changing a flat tire, was "using" the vehicle as he "was purposefully using the van as his means of transportation to his job. . . ." *Id.* at 672, 411 S.E.2d at 182.

Our Courts have also held that a person "uses" a motor vehicle when loading and unloading it, even if that person is not the named insured, *Casualty Co. v. Insurance Co.,* 16 N.C. App. 194, 199, 192 S.E.2d 113, 118, *cert. denied,* 282 N.C. 425, 192 S.E.2d 840 (1972), and

that a hunter "uses" a motor vehicle while hunting when he reaches into it to get a rifle, *State Capital, supra*, at 540, 350 S.E.2d at 70.

In *State Capital*, our Supreme Court noted that the provisions of N.C. Gen. Stat. § 20-279.21 *et. seq.*, commonly known as the Financial Responsibility Act, "are written into every automobile liability policy." *State Capital, supra*, at 538-39, 350 S.E.2d at 69. The Act provides that any motor vehicle policy certified as proof of financial responsibility shall insure the named insured against loss from the liability imposed by law "for damages arising out of the ownership, maintenance or use of such motor vehicle. . . ." N.C. Gen. Stat. § 20-279.21 (b)(2) (1994). The *State Capital* court, mindful that the "arising out of" language in the Act should be liberally construed, stated:

> [T]he test for determining whether an automobile liability policy provides coverage for an accident is not whether the automobile was a proximate cause of the accident. Instead, the test is whether there is a causal connection between the use of the automobile and the accident.

*Id.* at 539-40, 350 S.E.2d at 69.

Ms. Davis was purposefully using the van as a means of transportation to get to her destination, the Cat Square Superette. The van was instrumental in the trip to the Superette where the accident happened. Furthermore, there was a causal connection between the use of the van and the accident. Because Ms. Davis parked the van where she did, Tiffany had to cross a roadway to reach the Superette. In light of the foregoing authority, we conclude that the Davis' van was in "use" at the time of the accident and therefore hold that the auto policy provides coverage.

[2] We next examine the homeowner's policy to determine whether it also provides coverage for the accident. The homeowner's policy provides personal liability insurance coverage to any "**insured** for damages because of **bodily injury** or **property damage** caused by **an occurrence** to which this coverage applies . . . (emphasis in original)." However, the homeowner's policy contains the following exclusion:

> 1. **Coverage E—Personal Liability** and **Coverage F—Medical Payments to Others** do not apply to **bodily injury** or **property damage**: . . .

e. arising out of:

> (1) the ownership, maintenance, use, loading, or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an **insured** . . .

(emphasis in original). Plaintiffs argue that if, as we have already determined, the van was in "use" at the time of the accident so that the auto policy supplies coverage, we must necessarily find that the accident arose out of the "use" of the van so that the exclusion in the homeowner's policy bars coverage.

Plaintiffs base their argument in part on this Court's decision in *Beatty v. Charlotte-Mecklenburg Bd. of Education*, 99 N.C. App. 753, 394 S.E.2d 242, *disc. rev. allowed*, 327 N.C. 481, 397 S.E.2d 214 (1990), *disc. rev. dismissed*, 329 N.C. 691, 406 S.E.2d 579 (1991). In *Beatty* the Board had waived its governmental immunity to the extent that it had purchased a commercial insurance liability policy. The policy contained an exclusion similar to the one at issue in the homeowner's policy here. The plaintiff, who had been struck by a car as he attempted to reach his assigned bus stop, urged that the exclusion did not apply because his injuries occurred as a result of the negligent design of the bus route and not as a result of the "use, loading, or unloading" of the school bus. *Id.* at 755-56, 394 S.E.2d at 244. The Court held that the Board had not waived its immunity under the facts of the case but did not address the specific language of the exclusionary provision. *Id.* at 756, 394 S.E.2d at 245.

In contrast, the *State Capital* case contains an extensive discussion by our Supreme Court of the language of an exclusionary provision in a homeowner's policy similar to the one here. In that case, the owner of a pickup truck and a companion went on a hunting trip. The owner stored a rifle behind the seat of his truck because the truck's gun rack was full. The owner saw a deer and reached for the rifle from outside the truck. The rifle discharged, injuring the owner's companion as he was exiting the truck. *State Capital*, 318 N.C. at 536, 350 S.E.2d at 67-68. At the time of the accident, the owner maintained both an automobile insurance policy issued by Nationwide Mutual Insurance Company and a homeowner's liability insurance policy issued by State Capital Insurance Company. *Id.* A declaratory action was brought to determine the rights and liabilities of both insurance companies. *Id.* at 537, 350 S.E.2d at 68.

The Court first held that coverage was provided under the auto policy, finding that a causal connection existed between the use of the pickup truck and the passenger's injuries. *Id.* at 540-41, 350 S.E.2d at 69-70. The Court then went on to consider the applicability of the homeowner's policy. The Court reviewed case law from other jurisdictions which established two principles regarding a determination of coverage under homeowners' policies:

(1) ambiguous terms and standards of causation in exclusion provisions of homeowners policies must be strictly construed against the insurer, and (2) homeowners policies provide coverage for injuries *so long as a non-excluded cause is either the sole or concurrent cause of the injury giving rise to liability.* Stating the second principle in reverse, *the sources of liability which are excluded from homeowners policy coverage must be the sole cause of the injury in order to exclude coverage under the policy.*

*Id.* at 546, 350 S.E.2d at 73 (emphasis added).

The Court noted that both of these principles are supported by North Carolina case law.

First, it is well settled in North Carolina that insurance policies are construed strictly against insurance companies and in favor of the insured. . . . Provisions which exclude liability of insurance companies are not favored. . . . We agree with the Court of Appeals' decision that when strictly construed the standard of causation applicable to the ambiguous "arising out of" language in a homeowners policy exclusion is one of proximate cause.

. . .

Secondly, this Court has held that when an accident has more than one cause, one of which is covered by an "all risks" insurance policy and the other which is not, the insurer must provide coverage. In *Avis v. Hartford Fire Insurance Co.*, 283 N.C. 142, 150, 195 S.E.2d 545, 549 (1973), this Court stated: "As a general rule, coverage will extend when damage results from more than one cause even though one of the causes is specifically excluded."

*Id.* at 546-47, 350 S.E.2d at 73-74 (citations omitted). The Court then applied the two principles to the case and concluded that

the exclusionary language in the State Capital homeowners policy should be interpreted as excluding accidents for which the

sole proximate cause involves the use of an automobile. *If there is any non-automobile proximate cause, then the automobile use exclusion does not apply.*

*Id.* at 547, 350 S.E.2d at 74 (emphasis added).

We find the holding in *State Capital* controlling. In this case, the "use" of the van was not the *sole proximate cause* of the accident; a concurrent cause was Ms. Davis' negligent supervision of Tiffany when Tiffany exited the van to enter the Superette. Therefore, under *State Capital*, because there was a "non-automobile proximate cause" of the accident, the automobile exclusion does not apply to bar coverage under the homeowner's policy.

We therefore hold that both the auto policy and the homeowner's policy provide coverage for Tiffany's injuries. We agree with the *State Capital* court that

> when the properly construed terms of more than one policy provide coverage for a single accident, this result is not burdensome to the insurance companies nor against public policy—the companies have been paid premiums to cover certain risks, and when the event insured against occurs, those companies should be required to provide coverage.

*State Capital, supra,* at 548, 350 S.E.2d at 74.

Affirmed.

Judges EAGLES and McGEE concur.