BOBBY LEIGH MARING, PLAINTIFF v. HARTFORD CASUALTY INSURANCE COMPANY, DEFENDANT

No. COA96-803

(Filed 6 May 1997)

**Insurance § 509 (NCI4th)— police officer—directing traffic— struck by uninsured motorist—use of police vehicle—right to UM coverage**

A police officer directing traffic at an intersection with a malfunctioning traffic light was "using" his police car when he was struck by an uninsured motorist and was thus a "person insured" under N.C.G.S. § 20-279.21(b)(3) who was entitled to uninsured motorist benefits under an automobile liability policy issued to the city where the officer left the engine running and turned on all of the warning signals on the vehicle to warn others that there was a problem at the intersection, and he turned up the vehicle radio so that he would be able to hear any police communications from where he was directing traffic.

**Am Jur 2d, Automobile Insurance §§ 293 et seq.**

**Insured's right to bring direct action against insurer for uninsured motorist benefits. 73 ALR3d 632.**

MARING v. HARTFORD CASUALTY INS. CO.

[126 N.C. App. 201 (1997)]

Who is "member" or "resident" of same "family" or "household," within no-fault or uninsured motorist provisions of motor vehicle insurance policy. 96 ALR3d 804.

Applicability of uninsured motorist statutes to self-insurers. 27 ALR4th 1266.

Appeal by defendant from judgment filed 1 February 1996 in Robeson County Superior Court by Judge Joe Freeman Britt. Heard in the Court of Appeals 19 March 1997.

*Musselwhite, Musselwhite, Musselwhite & Branch, by James W. Musselwhite, for plaintiff-appellee.*

*Hedrick & Blackwell, L.L.P., by B. Danforth Morton, for defendant-appellant.*

GREENE, Judge.

Hartford Casualty Insurance Company (defendant) appeals a judgment determining that Bobby Leigh Maring (plaintiff) was insured pursuant to the uninsured motorist (UM) coverage provided by the defendant.

The following findings of fact are undisputed:

1. That on November 22, 1994, the Plaintiff was working the day shift with the Lumberton City Police Department, . . . .

2. That the Lumberton City Police Department assigned a marked police vehicle to the Plaintiff for use during working hours. That said vehicle was maintained by the Plaintiff on a twenty-four hour basis and when not used for police business was kept at Plaintiff's residence. That said vehicle was insured pursuant to the [Policy].

3. . . . After attending roll call [on 22 November 1994], the Plaintiff returned to his vehicle and started random patrol with such vehicle as required by his employer.

4. . . . Plaintiff observed that the traffic signals located at the intersection . . . were malfunctioning.

5. That such intersection has twenty lanes and the traffic on that particular day was very heavy. That upon seeing the malfunctioning traffic signals, the Plaintiff made appropriate radio

MARING v. HARTFORD CASUALTY INS. CO.

[126 N.C. App. 201 (1997)]

contact and advised of the problem and requested assistance from the Department of Transportation to correct the same.

6. That the Plaintiff then positioned his car in the intersection in a position so as not to impede the flow of traffic but so the same could be seen by vehicles approaching the intersection. Before exiting his vehicle, the Plaintiff activated all visible warning devices located on his police vehicle. . . .

7. That the Plaintiff positioned his vehicle in the manner described and activated all visible warning devices in order to warn persons utilizing the intersection of the dangerous condition existing and to protect Plaintiff as he was directing traffic pending repair of the traffic signals.

8. Prior to exiting the vehicle, the Plaintiff made sure that the radio utilized for communications was turned to a high volume and the window on the driver's side was completely rolled down. That this enabled the Plaintiff to hear communications which were dispatched when he was within close proximity of the police vehicle.

9. That prior to exiting the vehicle, the Plaintiff retrieved an orange warning vest which he was to utilize while directing traffic and which was stored within the police vehicle.

10. That when the Plaintiff exited his vehicle he left the motor running in order to allow the continued use of all visible warning devices and radio. That after exiting the vehicle and, within no longer than five minutes, the Plaintiff was struck by . . . Britt.

. . . .

12. That if the Plaintiff had not been struck as stated above, then after repair of the malfunctioning traffic signals, the Plaintiff would have returned to his vehicle and resumed required random patrol.

. . . .

The parties stipulated that defendant issued a motor vehicle liability insurance policy (Policy), including UM coverage, to the City of Lumberton (City) beginning 1 July 1994 and continuing through 1 July 1995 and the City was the named insured on the Policy. The Policy provided UM coverage for the named insured and "[a]nyone else

'occupying' a covered 'auto.' " Plaintiff was directing traffic in the course and scope of his employment when he was struck by a vehicle being operated by Wendy Britt (Britt). Britt's vehicle was not insured at the time of the accident and under the terms of the Policy, Britt's vehicle fell within the definition of an "uninsured vehicle." Plaintiff submitted a claim to the defendant "pursuant to the [UM] coverage" of the Policy and the claim was denied.

The trial court concluded that the definition of "insured" included in the Policy (the named insured and anyone else occupying a covered auto) "is contrary to N.C.G.S. § 20-279.21(3)b," [sic] and due to the conflict, section 20-279.21(b)(3) controls and "persons insured" includes "any person who uses with the consent, express or implied, of the name [sic] insured, the motor vehicle to which the policy applied." Because plaintiff was "using" the police car at the time he was injured, the trial court concluded that plaintiff was an "insured" under the UM coverage provided by the Policy.

The issue is whether plaintiff was "using" his police car at the time he was injured.

Defendant contends that plaintiff is not an "insured" under either N.C. Gen. Stat. § 20-279.21(b)(3) (1993) or the terms of the Policy, and therefore has no claim for benefits under the Policy. Plaintiff "concedes that he cannot recover under the terms of the [P]olicy limiting recovery to individuals 'occupying' the vehicle," but argues that he qualifies as an "insured" under the statutory definition because he was using the insured vehicle at the time he was injured. We agree.

Section 20-279.21(b)(3) provides that a "person[] insured" is

the named insured and, while resident of the same household, the spouse of any named insured and relatives of either, while in a motor vehicle or otherwise, *and any person who uses with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies* . . . .

N.C.G.S. § 20-279.21(b)(3) (emphasis added). As it related to underinsured motorist coverage, "this Court adopted the ordinary meaning of the word 'use.' " *Nationwide Mut. Ins. Co. v. Davis*, 118 N.C. App. 494, 497, 455 S.E.2d 892, 894, *disc. rev. denied*, 341 N.C. 420, 461 S.E.2d 759 (1995). "Use" means to "put into action or service," "to carry out a purpose or action by means of," or "[to] make instrumental to an end or process." *Id.* " '[U]se' may refer to more than the

actual driving or operation of a vehicle." *Id.* The vehicle need not be the proximate cause of the accident, but there must be some "causal connection between the use of the [vehicle] and the accident." *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 539-40, 350 S.E.2d 66, 69 (1986). Our courts have found that a vehicle was "used" in a variety of situations when determining insurance coverage. *See State Capital Ins. Co.*, 318 N.C. at 540, 350 S.E.2d at 70 (hunter reaching into vehicle to get a rifle); *Whisnant v. Insurance Co.*, 264 N.C. 303, 308, 141 S.E.2d 502, 506 (1965) (insured trying to push the vehicle off of the road); *Davis*, 118 N.C. App. at 498, 455 S.E.2d at 895 (vehicle was "used" when the driver parked the vehicle across the street from a supermarket and the insured got out of the vehicle and began walking across the street and was struck by a car); *Leonard v. N.C. Farm Bureau Mut. Ins. Co.*, 104 N.C. App. 665, 672, 411 S.E.2d 178, 182 (1991) (vehicle was being "used" when the insured was injured while changing a tire), *rev'd on other grounds*, 332 N.C. 656, 423 S.E.2d 71 (1992); *Casualty Co. v. Insurance Co.*, 16 N.C. App. 194, 199, 192 S.E.2d 113, 118, (person "uses" a vehicle when he is loading or unloading it), *cert. denied*, 282 N.C. 425, 192 S.E.2d 840 (1972).

The record indicates that as a police officer, plaintiff was assigned a patrol vehicle by the City and authorized and required to use it in performing his duties. On this particular day, upon seeing the malfunctioning traffic light, plaintiff positioned his vehicle so as not to block the intersection and so that it could be easily seen by other motorists. He proceeded to turn on all of the warning signals that were available on the vehicle to warn others that there was a problem at the intersection and that he was directing traffic. After exiting the vehicle he left the engine running so that the warning signs on the vehicle would continue to operate while he was in the intersection. Further, plaintiff turned up the vehicle's radio so that he would be able to hear any police communications from where he was directing traffic. After getting his orange vest from his vehicle, plaintiff walked into the intersection and began directing traffic.

These facts reveal that at the time of the accident the plaintiff was using his vehicle to assist him in the performance of his duties as a police officer. The vehicle was actually being used to warn other motorists of the malfunctioning traffic light. In other words the vehicle was being "put to service" for a purpose intended by the City, the named insured. Therefore the plaintiff is among those "persons insured" under the statute and entitled to UM coverage under the Policy. The order of the trial court is

Affirmed.

Judges Walker and McGee concur.