ERIE INSURANCE EXCHANGE, Plaintiff v. SONDRA ADAMS BLEDSOE, Defendant

No. COA99-1392

(Filed 29 December 2000)

**Insurance— homeowner's—coverage—instructions—proximate concurrent cause**

The trial court erred by not giving a requested special jury instruction on proximate concurrent cause in a declaratory judgment action to determine coverage under a homeowner's insurance policy where a fire occurred at defendant's home; the contractor renovating the home placed about three and a half tons of sheet rock on the living room floor for an extended period; defendant alleges that the floor and foundation were damaged by the fire, water damage, and the contractor's actions; and plaintiff contends that the damage to the floor was the result of settling due to inadequate original construction, an event excluded by the policy. The policy excludes settling, but coverage will not be barred by the settling provision if the settling is so severe as to constitute a collapse. The policy here is ambiguous because it provides coverage for "collapse" under certain circumstances but does not make clear whether coverage is allowed if one of the listed factors combines with another covered peril under a different provision of the policy (fire and water damage) to cause the collapse. The dominant or efficient cause jury instruction given by the court was not improper, but was incomplete and unclear because the jury was not allowed to consider whether multiple factors combined to cause this damage. Defendant's request for a proximate concurrent cause instruction, though flawed, was correct and supported by the evidence.

Appeal by defendant from a judgment and order entered 1 October 1998 and 25 November 1998 respectively by Judge Robert L. Farmer in Wake County Superior Court. Heard in the Court of Appeals 20 September 2000.

*Cranfill, Sumner & Hartzog, L.L.P., by Robert W. Sumner and Stephanie Hutchins Autry, for plaintiff-appellee.*

*G. Henry Temple, Jr. and Stephen W. Petersen, for defendant-appellant.*

HUNTER, Judge.

Sondra Adams Bledsoe ("Bledsoe") appeals from the trial court's declaratory judgment after a jury verdict in favor of Erie Insurance Exchange ("Erie"), and its order denying Bledsoe's motion for judgment notwithstanding the verdict, or in the alternative a new trial. Bledsoe assigns as error the trial court's failure to give a special jury instruction regarding proximate concurrent causation in this homeowner's insurance coverage determination suit. After a careful review of the record and briefs, we agree with Bledsoe and find that the trial court erred in failing to give such an instruction, thus we remand for a new trial.

In May 1995, Bledsoe purchased a homeowner's insurance policy from Erie for her residence located in Rolesville, North Carolina. This policy provided coverage for damage to Bledsoe's home caused by certain perils including fire, water damage caused by fire suppression efforts (hereinafter "water damage"), and "collapse." On 13 November 1995, a fire occurred at Bledsoe's home, which resulted in significant damage to the residence. During post-fire repairs, the contractor renovating the home placed approximately three and a half tons of sheet rock on the residence's living room floor for an extended period. As a result of the fire, water damage, and the contractor's actions, Bledsoe alleges that the floor and foundation of the residence (hereinafter "floor") was damaged by "noticeable and substantial buckling and sagging."

While Erie paid Bledsoe for all of the damage to the residence which it believed was caused by the fire and water damage, Erie has refused to pay for the renovations to the floor claiming that the damage at issue was preexisting and the result of natural "settling"—an excluded event under the policy—that occurred over a long period of time due to the inadequate original construction of the home. Conversely, Bledsoe alleges that the buckling and sagging of the floor was a "collapse" caused by the combination of multiple factors, including fire, water damage, and the contractor's defective methods of renovation, in particular, the placement of three and a half tons of sheet rock on the residence's living room floor.

In an effort to resolve their dispute, Erie instituted this action on 22 November 1996 seeking a declaratory judgment concerning its obligations under the homeowner's insurance policy, specifically whether it was liable under the policy to provide coverage for the renovation of the floor and related costs. Subsequently, Bledsoe filed an

answer and counterclaims seeking punitive damages and alleging breach of contract, negligent infliction of emotional distress, and unfair trade practices.

On 28 July 1997, the Honorable Narley L. Cashwell of Wake County Superior Court entered an order, on Erie's motion, bifurcating Erie's declaratory judgment action from Bledsoe's counterclaims. This appeal arises out of the declaratory judgment phase of the litigation.

Erie's declaratory judgment action came on for trial before the Honorable Robert L. Farmer and a duly empaneled jury in Wake County Superior Court on 21 September 1998. Ultimately, two issues were submitted to the jury for resolution:

1. Were the deflections or displacements in the floors a result of the condition of the floor framing and/or the foundation caused by the fire or water to extinguish the fire on November 13, 1995?

2. Were the deflections or displacements in the floors after the fire on November 13, 1995 a collapse caused by the placement of sheetrock by the contractor, Bryant-Phillips Associates?

Judge Farmer instructed the jury based on a "dominant or efficient cause" standard. Specifically, he stated,

When I use the word caused, the word caused means proximate cause to which the loss is to be attributed and is the dominant or efficient cause. In other words, something is caused by an event when the event is the real efficient or proximate cause.

The jury answered "[n]o" to both submitted issues.

Judge Farmer entered a declaratory judgment after the jury's determination on 1 October 1998, declaring that the damage to the floor was not a covered loss under Erie's policy with Bledsoe. On 12 October 1998, Bledsoe followed with a motion for judgment notwithstanding the verdict, or in the alternative a new trial. Judge Farmer denied the motion, and on 30 November 1998, Bledsoe gave notice of appeal.

Bledsoe's sole assignment of error on appeal is that the trial court committed reversible error by denying her request for a special jury instruction regarding proximate concurrent cause as to issue one— "[w]ere the deflections or displacements in the floors a result of the

condition of the floor framing and/or the foundation caused by the fire or water to extinguish the fire on November 13, 1995?" We agree with Bledsoe's contention that the trial court's failure to incorporate a proximate concurrent cause instruction was reversible error. We find that this error misled the jury, and ultimately precluded the jury from considering that multiple factors may have combined to cause the damage to the floor.

First, requests for special jury instructions are allowed in North Carolina pursuant to N.C. Gen. Stat. § 1-181 and N.C. Gen. Stat. § 1A-1, Rule 51(b). In particular, N.C. Gen. Stat. § 1-181(b) (1999) requires that "requests for special instructions must be submitted to the trial judge before the judge's charge to the jury is begun. . . ."

In the case at bar, Bledsoe complied with this statutory requirement by making her initial request for a special jury instruction prior to the trial court charging the jury. Bledsoe stated, "[t]he only thing I want is a proximate cause instruction and pattern that—pattern the jury instructions." Bledsoe then submitted two pattern proximate cause jury instructions—applicable to tort cases—to the court. As Erie fails to raise any statutory deficiency challenges to the form of Bledsoe's request, we treat Bledsoe's initial prayer as a proper request for a special jury instruction.

Additionally, while we agree with Erie that the pattern instructions submitted by Bledsoe were not applicable to the case *sub judice*, Bledsoe's intent was to have a special jury instruction which patterned the models that she submitted. She was not requesting the actual pattern jury instructions themselves.

In answer to Bledsoe's request for a special instruction, Judge Farmer responded, "[t]hat's not the law I don't think," and he placed the request in the file. Judge Farmer did not include a proximate concurrent cause instruction in his charge.

After the jury charge was complete, Judge Farmer asked the parties, "if you have any additional matters you wish the Court to consider charging on or any corrections you feel should be made to the charge already given . . . ." In response, Bledsoe submitted a handwritten request adapting the pattern jury instructions to the case at bar. Upon this request, Judge Farmer did not give the proximate concurrent cause instruction, but he did place the request in the file. Erie contends that this request was not timely made, however, according to N.C. Gen. Stat. § 1-181(b), "the judge may, in his discretion, con-

sider such requests [for special instructions] regardless of the time they are made." Judge Farmer had the discretion to elicit and hear additional requests for special jury instructions, thus he did so here. We acknowledge that Bledsoe's requested instruction may have been flawed, however, her intent to have an instruction that incorporated proximate concurrent cause was clear.

Furthermore, our Supreme Court has held that

> when a request is made for a specific instruction, correct in itself and supported by evidence, the trial court, while not obliged to adopt the precise language of the prayer, is nevertheless required to give the instruction, in substance at least, and unless this is done, either in direct response to the prayer or otherwise in some portion of the charge, the failure will constitute reversible error.

*Calhoun v. Highway Com.*, 208 N.C. 424, 426, 181 S.E. 271, 272 (1935). Therefore, to determine whether the trial court committed reversible error here, we must assess whether Bledsoe's request for a proximate concurrent cause jury instruction was correct in itself and supported by the evidence.

To make this determination, we must address the present state of the law of homeowners' insurance policies in North Carolina. "First, it is well settled in North Carolina that insurance policies are construed strictly against insurance companies and in favor of the insured." *State Capital Ins. Co. v. Nationwide Mutual Ins. Co.*, 318 N.C. 534, 546, 350 S.E.2d 66, 73 (1986); *Nationwide Mutual Ins. Co. v. Davis*, 118 N.C. App. 494, 500, 455 S.E.2d 892, 896 (1995).

Secondly, two primary principles with respect to determining coverage under homeowners' policies have been espoused in North Carolina:

> (1) ambiguous terms and standards of causation in exclusion provisions of homeowners policies must be strictly construed against the insurer, and (2) homeowners policies provide coverage for injuries so long as a non-excluded cause is either the sole or concurrent cause of the injury giving rise to liability. Stating the second principle in reverse, the sources of liability which are excluded from homeowners policy coverage must be the sole cause of the injury in order to exclude coverage under the policy.

*State Capitol*, 318 N.C. 534, 546, 350 S.E.2d 66, 73; *Nationwide*, 118 N.C. App. 494, 500, 455 S.E.2d 892, 896.

At bar, Erie's policy with Bledsoe provides coverage for damage by fire and water damage resulting from fire suppression efforts. Further, Erie's policy with Bledsoe also provides coverage for "collapse":

> 8. Collapse. We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:
>
> . . .
>
> f. use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Importantly, this Court has previously deemed the term "collapse" as used in homeowners' policies ambiguous and has construed the ambiguity against the insurance company and in favor of the insured. *See Markham v. Nationwide Mut. Fire Ins.* Co., 125 N.C. App. 443, 453, 481 S.E.2d 349, 356 (1997); *Guyther v. Nationwide Mut. Fire Ins. Co.*, 109 N.C. App. 506, 512, 428 S.E.2d 238, 241 (1993); *Thomasson v. Grain Dealers Mut. Ins. Co.*, 103 N.C. App. 475, 476, 405 S.E.2d 808, 809 (1991). At bar, Erie's policy makes clear that coverage for "collapse" is allowed if, "caused only by one or more of the following . . . use of defective . . . methods in construction, remodeling or renovation . . . ." However, the policy does not make clear whether coverage for "collapse" is allowed if one of the listed factors—in this case, defective methods of renovation—combines with another covered peril under a different provision of the policy—fire and water damage—to cause a "collapse." Thus, we deem the term "collapse" as it appears in Erie's policy with Bledsoe ambiguous.

We recognize that Erie's policy with Bledsoe excludes liability for "settling" in two places. In Section I—Perils Insured Against, the policy states, "we do not insure loss: . . . (2) caused by: . . . (f) . . . (6) settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings . . . ." Also, in the "collapse" provision itself, it is stated, "[c]ollapse does not include settling, cracking, shrinking, bulging or expansion."

However, this Court has in the past held that coverage will not be barred by the "settling" provision in a homeowners' policy when there is evidence of "settling" which is so severe that it "suddenly and materially impair[s] the structure or integrity of [a] building," and therefore constitutes a "collapse." *Guyther*, 109 N.C. App. 506, 513, 428 S.E.2d 238, 242; *Markham*, 125 N.C. App. 443, 453, 481 S.E.2d 349, 356. Moreover, provisions, such as Erie's "settling" clauses, "which exclude liability of insurance companies are not favored" by this Court. *State Capitol*, 318 N.C. 534, 547, 350 S.E.2d 66, 73; *Nationwide*, 118 N.C. App. 494, 500, 455 S.E.2d 892, 896.

Hence, evoking principle one as stated in *State Capitol* above, we strictly construe all ambiguities against Erie and in favor of Bledsoe. We next repeat the second principle regarding homeowners' policy coverage stated in *State Capitol*, "the sources of liability which are excluded from homeowners policy coverage must be the sole cause of the injury in order to exclude coverage under the policy." 318 N.C. at 546, 350 S.E.2d at 73. Under this interpretation, "settling" must be the sole cause of the damage to Bledsoe's floors to be excluded under the policy.

Through issue one—"[w]ere the deflections or displacements in the floors a result of the condition of the floor framing and/or the foundation caused by the fire or water to extinguish the fire on November 13, 1995?"—the jury was only allowed to determine whether the fire and water damage (covered perils) resulted in the damage to the floor.

Through issue two—"[w]ere the deflections or displacements in the floors after the fire on November 13, 1995 a collapse caused by the placement of sheetrock by the contractor, Bryant-Phillips Associates?"—the jury was only allowed to consider whether the damage to the floor was a "collapse" caused by defective methods of renovation (covered peril).

We disagree with Erie's conclusion that the existence of issue two gave the jury an actual opportunity to consider multiple causes of the damage to the floor. With regards to this second issue, we accept that the jury answered that the damage to the floor was not a "collapse" caused by the contractor's placement of sheet rock. However, we find that the wording of issue two limited the scope of the jury's analysis, so that they could only consider one cause of the collapse, the sheet rock, and no other.

Consequently, while the jury was allowed to consider through these two submitted issues whether (1) the fire and water damage or (2) defective methods of renovation (all covered perils) individually caused the damage to the floor, at no time was the jury allowed to determine whether (1) the fire and water damage combined with (2) the contractor's defective methods of renovation to cause a "collapse," or in the alternative, "settling" so severe that it constitutes a "collapse" (covered peril). A question of that nature should have been sent to the jury for determination.

Accordingly, we find that there was sufficient evidence presented at trial to have submitted to the jury this issue of whether the damage was a result of natural "settling," as Erie contends, or the combination of (1) fire and water damage (covered perils) and (2) the contractor's defective methods of renovation (covered peril), which caused a "collapse," or in the alternative, "settling" so severe that it constitutes a "collapse" (covered peril)—a prospective issue three.

We find little guidance in the line of North Carolina cases that interpret insurance contracts' "windstorm" provisions, and we therefore find these cases distinguishable from the case at bar. *See Harrison v. Insurance Co.*, 11 N.C. App. 367, 181 S.E.2d 253 (1971); *Wood v. Insurance Co.*, 245 N.C. 383, 96 S.E.2d 28 (1957); *Miller v. Insurance Association*, 198 N.C. 572, 152 S.E. 684 (1930).

All three cases mentioned above address insurance policies which provide "windstorm" coverage. Although these cases do rightfully uphold a "dominant or efficient cause" standard, they are distinguishable in this instance. For example, unlike the case at bar, these cases do not deal with coverage under the "collapse" provision of a homeowner's policy. Secondly, "windstorm" has not been deemed ambiguous by this Court, while "collapse" has been so deemed. These cases therefore are not applicable to the case *sub judice*.

More directly on point, this Court has on at least three occasions specifically dealt with "collapse" provisions under homeowners' insurance policies. *See Markham*, 125 N.C. App. 443, 481 S.E.2d 349; *Guyther*, 109 N.C. App. 506, 428 S.E.2d 238; *Thomasson*, 103 N.C. App. 475, 405 S.E.2d 808. In each case, we deemed "collapse" ambiguous. *Id.* In two of these cases, we specifically dealt with the "settling" exclusion provision. *Markham*, 125 N.C. App. 443, 481 S.E.2d 349; *Guyther*, 109 N.C. App. 506, 428 S.E.2d 238. Finally, in both cases, we

refused to bar coverage for "collapse" under the "settling" provision as there was sufficient evidence that the "settling" was so severe that it could constitute a "collapse." *Id.* Thus, our holding at bar is entirely consistent with our prior rendered decisions interpreting "collapse" and "settling" provisions of homeowners' insurance policies.

We reiterate that our holding here is based on the ambiguity of the term "collapse" as it appears in Erie's policy with Bledsoe. Further, we stress that our holding is not premised on the notion that the "dominant or efficient cause" jury instruction used *sub judice* was improper, but, in fact, we find that the court's instruction was simply incomplete and unclear. Without a proximate concurrent cause clarification here, we find that the jury was not fully instructed in the law as they were not allowed to consider whether multiple factors combined to cause the damage at issue.

> Nevertheless, when, as here, the facts and circumstances surrounding a claim—especially causation—remain in dispute, it is for the jury, not the trial court, to determine whether the ultimate cause of the claimed damages falls within the scope of the policy's exclusionary provisions, as defined by the trial court.

*Markham*, 125 N.C. App. 443, 453, 481 S.E.2d 349, 355.

Thus, Bledsoe's request for a proximate concurrent cause jury instruction, although flawed, was correct in itself and supported by the evidence. Consequently, the trial court's failure to include a charge incorporating a proximate concurrent cause instruction in substance was reversible error. We hereby remand for a new trial consistent with this opinion.

New trial.

Judges LEWIS and WYNN concur.