MEMORANDUM **
Pavao appeals from the district court’s summary judgment for Allstate. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
Jake Pavao’s injuries arose out of his occupancy of a vehicle, and thus appear to fall squarely within the terms of Exclusions 5 and 7 of the policy. Pavao nevertheless argues that his negligent supervision claim is not excluded because Russell’s negligent supervision was a separate, non-vehicle-related concurrent cause of Jake’s death, and relies on the *265 “concurrent causation doctrine.” Nevada’s Supreme Court has examined the concurrent causation doctrine but has not yet decided whether to adopt it. See Fire Ins. Exch. v. Cornell, 120 Nev. 303, 90 P.3d 978 (2004); Hernandez v. First Fin. Ins. Co., 106 Nev. 900, 802 P.2d 1278 (1990); Senteney v. Fire Ins. Exch., 101 Nev. 654, 707 P.2d 1149 (1985).
We need not decide whether the Nevada Supreme Court would adopt the concurrent causation doctrine, because the doctrine would not apply here. To escape an exclusion, a concurrent cause must be truly “separate and distinct” from the excluded cause. Senteney, 707 P.2d at 1151. If there is a “sufficient nexus” between an excluded cause and the acts of the insured that give rise to the claim, the acts are not truly a “separate and distinct” cause, but rather fall within the exclusion. Id.; see also Mailhiot v. Nationwide Mut. Fire Ins. Co., 169 Vt. 498, 740 A.2d 360, 362-63 (1999) (holding that a negligent supervision claim fell within an automobile exclusion similar to Exclusion 5, because there was “no way to separate” the parents’ negligent supervision from vehicle-related conduct where “the only alleged negligent' act [by the parents] ... was allowing the two boys to depart on the vehicle ”); Taylor v. Am. Fire & Cas. Co., 925 P.2d 1279, 1283 (Utah Ct.App.1996) (holding that a negligent supervision claim was excluded because it was “firmly grounded in [the parents’] failure to supervise [the child’s] use or operation of the automobile, and the use of the vehicle is essential to the theory supporting their alleged liability”) (internal citations omitted).
Here, Pavao’s negligent supervision claim is wholly based on Russell’s act of giving Jake permission to ride in a specific car with a specific driver. This act falls squarely within Exclusion 7, which excludes “injury ... arising out of ... the negligent supervision by an insured person of any person ... arising from the ... use [or] occupancy ... of any ... motor vehicle.” The car is not, as Pavao argues, “incidental” to the claim. The car is at the heart of the claim. Pavao’s complaint in his underlying state court action shows that Pavao’s entire theory of negligent supervision is based on Russell’s express grant of permission to ride with Yadon. Pavao reframes the claim in general terms, saying that “Russell’s negligent supervision arose from her decision to allow Jake Pavao to leave her residence under circumstances that made it unsafe for him to do so,” and that such negligent supervision “could easily have resulted in Jake Pavao being injured in any number of ways” that do not involve a car. Pavao urges that, because negligent supervision can occur without the use of a vehicle (for example, by allowing a child to play with guns or swim in an unsafe place), the car was “not instrumental to [Russell’s negligent] act, nor does the precise instrumentality of Jake’s injury operate to preclude coverage.” However, “[a]n insured cannot be liable ... for negligence in the abstract. Rather, an insured is liable for negligence with respect to a particular object or instrumentality.” Mailhiot, 740 A.2d at 362-63. Here, Pavao alleges negligent supervision with regard to Jake’s occupancy of Yadon’s car, regardless of the precise theory of liability asserted.
This is not a case such as State Farm Mutual Automobile Insurance Co. v. Partridge, 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123 (1973) or Salem Group v. Oliver, 128 N.J. 1, 607 A.2d 138 (1992), where the insureds’ alleged negligence arose out of a distinct act and instrumentality not inextricably entwined with a car (in Partridge, modifying a gun; in Oliver, serving alcohol to a minor). This case is also distinguishable from cases such as Columbia Mutual Insurance Co. v. Neal, 992 S.W.2d 204 (Mo.Ct.App.1999) and Nationwide Mutual *266 Insurance Co. v. Davis, 118 N.C.App. 494, 455 S.E.2d 892 (1995), where the negligent supervision claims at issue were not based on the child’s occupancy of a motor vehicle, and where the policies at issue did not contain language like Exclusion 7, which expressly excludes coverage for injuries arising from vehicle-related negligent supervision.
The policy’s exclusions apply even though Jake was not operating the vehicle. Neither exclusion is limited to negligent supervision arising out of another’s operation of a vehicle; the terms “use” and “occupancy” encompass not just driving a car but riding as a passenger. Similarly, it is irrelevant that Russell never owned, used or occupied the vehicle that caused Jake’s injuries. Exclusions 5 and 7 speak only of “the ... use [or] occupancy” of a vehicle generally, and Exclusion 7 excludes negligent supervision arising from occupancy of “any” vehicle. Nothing in their language suggests that they apply only if the insured owned, used or occupied the vehicle.
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9 th Cir. R. 36-3.