NO. COA13-1266

NORTH CAROLINA COURT OF APPEALS

Filed:  6 May 2014

INTEGON NATIONAL INSURANCE
COMPANY,
     Plaintiff,

v.                                    Forsyth County
                                      No. 12 CVS 6350
HELPING HANDS SPECIALIZED
TRANSPORT, INC. and LESLIE TAYLOR,
Executor of the Estate of MARY
LEWIS FAGGART SMITH,
     Defendants.


     Appeal by plaintiff from order entered 12 August 2013 by
Judge A. Moses Massey in Forsyth County Superior Court.  Heard
in the Court of Appeals 7 April 2014.


     *Bennett & Guthrie, P.L.L.C., by Roberta King Latham, for
     plaintiff-appellant.*

     *Mills & Levine, by Michael J. Greer, for defendant-appellee
     Leslie Taylor.*


     MARTIN, Chief Judge.


     Plaintiff  Integon  National  Insurance  Company  filed  this

action  seeking  a  declaration  of  its  obligations  to  provide

coverage  pursuant  to  a  business  automobile  liability  insurance

policy  issued  to  defendant  Helping  Hands  Specialized  Transport,

Inc.  for  the  alleged  personal  injuries  and  death  of  Mary  Lewis

Faggart Smith which arose out of an incident on 24 May 2010. Defendant Leslie Taylor is Ms. Smith's niece and the executor of Ms. Smith's estate. Ms. Taylor, through counsel, accepted service of process and filed an answer. Helping Hands was served with process, but failed to answer or otherwise respond to the complaint, and its default was entered by the Clerk of Superior Court. After discovery, both Integon and Ms. Taylor filed motions for summary judgment.

The materials before the trial court at the summary judgment hearing tended to show that at the time of Ms. Smith's injury, Helping Hands had a business automobile insurance policy with Integon which insured against liability for damages "caused by an accident and resulting from the ownership, maintenance or use of a covered" vehicle.

The materials also disclosed that prior to 24 May 2010, Ms. Smith had been hospitalized at Carolinas Medical Center and her treating physician had determined that she was nearing the end of her life and recommended to Ms. Taylor that she arrange for palliative care for her aunt. Ms. Taylor contracted with Hospice of Cabarrus County to provide hospice care for Ms. Smith at Ms. Smith's home. Hospice arranged for Helping Hands to transport Ms. Smith from the hospital to her home on May 24th.

A Helping Hands handicapped accessible van, driven by Helping Hands driver Robert Brennan, went to the hospital on that date. Ms. Smith, who was seated in a Geri-chair, was loaded into the van and Mr. Brennan transported her safely to her residence, where Ms. Taylor was waiting.

There was also evidence tending to show that prior to the van's arrival, Ms. Taylor had received two telephone calls asking whether a ramp would be needed to negotiate the steps to Ms. Smith's home, and she responded that a ramp would be needed. The record is unclear as to whether these inquiries were made by Helping Hands or Hospice. Nevertheless, when the van arrived with Ms. Smith, there was no ramp.

Mr. Brennan used the van's hydraulic lift to lower Ms. Smith, in the Geri-chair, from the van to the driveway and removed the Geri-chair from the van's lift. Shortly thereafter, it began to rain. Mr. Brennan rolled Ms. Smith up a sidewalk to the house's front steps. Although the Geri-chair had wheels, it was not appropriate for transporting Ms. Smith up the steps and into the house, so Mr. Brennan asked Ms. Taylor if she had a wheelchair. Ms. Taylor went into the house and rolled a wheelchair onto the porch and Mr. Brennan carried it down the steps. Ms. Smith was transferred from the Geri-chair to the

wheelchair without sustaining any injury. Mr. Brennan then proceeded to ascend the steps backwards and pull the wheelchair, facing backwards, up the steps. After going up the first step, Ms. Smith started sliding out of the wheelchair; Ms. Taylor grabbed one of her legs to keep her from sliding out of the chair, and Mr. Brennan put his arm around Ms. Smith and pulled the wheelchair up the second step. Once they were on the porch, Ms. Taylor discovered that Ms. Smith had sustained a gash on her leg. Ms. Smith passed away two days later. Neither Ms. Taylor nor Mr. Brennan recall whether the van's engine was running while Ms. Smith was unloaded from the van, transferred to the wheelchair, and taken up the porch steps. The series of events from the time Ms. Smith arrived at her home until the injury lasted approximately five minutes.

Ms. Taylor has filed an action seeking damages in Cabarrus County Superior Court entitled *Leslie Taylor, Executor of the Estate of Mary Lewis Faggart Smith v. Hospice of Cabarrus County, Inc. and Helping Hands Specialized Transport, Inc.*, 12 CVS 1741, asserting that the alleged negligence, on the part of the named defendants, proximately resulted in Ms. Smith's injuries and death.

The trial court denied Integon's motion for summary

judgment and granted Ms. Taylor's motion for summary judgment, holding that Integon's policy provides coverage in the full amount of the policy limits to Helping Hands for its liability, if any, with respect to the incident, and that Integon is obligated to provide a defense to Helping Hands for the claim. Integon appeals.

_____

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)). A question of fact

> is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action. The issue is denominated "genuine" if it may be maintained by substantial evidence.

*Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972).

In this case, while there may be genuine issues of fact which are material to the issues of negligence and the liability

of Helping Hands for the injuries and death of Ms. Smith, none of those factual issues are material to the issue of whether Integon's policy of insurance provides coverage to Helping Hands for any such liability. Thus, summary judgment is an appropriate procedure for the resolution of this declaratory judgment action. *See Pine Knoll Ass'n v. Cardon*, 126 N.C. App. 155, 158, 484 S.E.2d 446, 448, *disc. review denied*, 347 N.C. 138, 492 S.E.2d 26 (1997).

While Integon's policy insured Helping Hands against liability for damages "caused by an accident and resulting from the ownership, maintenance or use of a covered" vehicle, N.C.G.S. § 20-279.21 requires that an automobile liability insurance policy provide coverage for damages "arising out of the ownership, maintenance or use of" the covered vehicle. N.C. Gen. Stat. § 20-279.21(b)(2) (2013). Our case law has established that this statute is written into every automobile liability policy. *Nationwide Mut. Ins. Co. v. Chantos*, 293 N.C. 431, 441, 238 S.E.2d 597, 604 (1977), *appeal after remand*, 298 N.C. 246, 258 S.E.2d 334 (1979).

In *Fidelity & Casualty Co. of New York v. North Carolina Farm Bureau Mutual Insurance Co.*, 16 N.C. App. 194, 198–99, 192 S.E.2d 113, 117–18, *cert. denied*, 282 N.C. 425, 192 S.E.2d 840

(1972), this Court defined the meaning of the language "arising out of the ownership, maintenance and use" of a vehicle as used in an automobile liability insurance policy. The Court stated:

> The policy provision in question speaks of liability "arising out of the ownership, maintenance or use" of the truck. The words "arising out of" are not words of narrow and specific limitation but are broad, general, and comprehensive terms effecting broad coverage. They are intended to, and do, afford protection to the insured against liability imposed upon him for all damages caused by acts done in connection with or arising out of such use. They are words of much broader significance than "caused by." They are ordinarily understood to mean "originating from," "having its origin in," "growing out of," or "flowing from," or in short, "incident to," or "having connection with" the use of the automobile. The act of loading and unloading a truck is not an act separate and independent of the use and *is an act necessary to accomplish the purpose of using the truck*.
>
> The parties do not, however, contemplate a general liability insurance contract. There must be a causal connection between the use and the injury. This causal connection may be shown to be an injury which is the natural and reasonable incident or consequence of the use, though not foreseen or expected, but the injury cannot be said to arise out of the use of an automobile if it was directly caused by some independent act or intervening cause wholly disassociated from, independent of, and remote from the use of the automobile.

*Id.* (emphasis added) (citations omitted).

Citing the foregoing, the North Carolina Supreme Court, in *State Capital Insurance Co. v. Nationwide Insurance Co.*, 318 N.C. 534, 539-40, 350 S.E.2d 66, 69 (1986) stated: "In short, the test for determining whether an automobile liability policy provides coverage for an accident is not whether the automobile was a proximate cause of the accident. Instead, the test is whether there is a causal connection between the use of the automobile and the accident."

In *State Capital*, two men traveled together in a pickup truck to survey some hunting land. *Id.* at 536, 350 S.E.2d at 67. The truck contained three guns, a rifle and shotgun in the gun rack and another rifle on the floor behind the seat. *Id.* The men stopped at a tract of land and got out of the truck to survey the area. *Id.* Thereafter, the passenger returned to the truck and, a short time later, the driver saw a deer and returned to the truck to retrieve his rifle. *Id.* As he moved the seat and reached for the rifle, it discharged, striking the passenger. *Id.* at 536, 350 S.E.2d at 68. The Supreme Court held that a causal connection existed between the use of the vehicle and the injury to the passenger because "the transportation and unloading of firearms are ordinary and customary uses of a motor vehicle" and the accident was a

reasonable consequence of such use. *Id.* at 540, 350 S.E.2d at 70.

Since the decision in *State Capital*, this Court has been liberal in its application of the principle that a motor vehicle liability insurance policy will provide coverage if an injury is caused by an activity that is necessarily or ordinarily associated with the use of the insured vehicle. In *Nationwide Mutual Insurance Co. v. Davis*, 118 N.C. App. 494, 498, 455 S.E.2d 892, 895, *disc. review denied*, 341 N.C. 420, 461 S.E.2d 759 (1995), this Court held that an automobile liability policy provided coverage for injuries to a child who was struck by another motor vehicle after getting out of the insured vehicle, driven by her grandmother, and crossing a roadway to go to a store. The Court reasoned that the grandmother was "purposefully using" the insured vehicle to go to the store, so that the vehicle "was instrumental in the trip" to the store, and that because the grandmother had parked the van where the child had to cross a roadway to get to the store, there was a causal connection between its use and the child's injury. *Id.*

Also, in *Integon National Insurance Co. v. Ward ex rel. Perry*, 184 N.C. App. 532, 535, 646 S.E.2d 395, 397 (2007), this Court held that an automobile liability policy provided coverage

to a minor child who had accompanied the owner of the insured vehicle to an automobile repair shop. While the insured vehicle was undergoing repairs, the child was struck by another vehicle in the shop. *Id.* This Court relied on *State Capital* and *Davis* to hold that because the insured driver, accompanied by the child, used the insured vehicle to go to the repair shop so that the vehicle could be repaired, a sufficient causal connection existed between the vehicle's use and the child's injuries to require coverage for the child's injuries. *Id.* at 534-35, 646 S.E.2d at 397.

In the present case, the insured vehicle was intended for use, on the date of the occurrence of Ms. Smith's injury, to transport her from the hospital to her residence for palliative care. Because she was unable to ambulate, application of the logic contained in *Davis* and *Ward* leads to the inference that the use of the insured van included moving Ms. Smith into her residence as a part of the transport service. Since we are unable to draw any meaningful distinction between the *Davis* and *Ward* facts and the facts of the instant case, and even though we might believe that the extension of coverage in those cases goes beyond the common-sense application of the principles of a causal connection, we are bound to follow them and hold that

there is a sufficient "causal connection" between the van's use and Ms. Smith's injury requiring Integon's policy to provide coverage.[1]  Our decision is not to be construed as an indication that we express any opinion as to the liability of any party to the underlying civil action.

Finally, plaintiff argues that after the trial court found that the insurance policy covered Ms. Smith's injury, the trial court should have reformed the policy to require payment of only the statutorily mandated minimum coverage amount.  We do not reach this argument.

North Carolina Rule of Appellate Procedure 10 requires:

> In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context.  It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion.

N.C.R. App. P. 10(a)(1).

Integon's complaint did not seek reformation of the

---

[1] Our Supreme Court has stated:  "While we recognize that a panel of the Court of Appeals may disagree with . . . an opinion by a prior panel and may duly note its disagreement . . . in its opinion, the panel is bound by that prior decision until it is overturned by a higher court."  *State v. Jones*, 358 N.C. 473, 487, 598 S.E.2d 125, 134 (2004).

insurance contract, only a declaration that its policy provided no coverage to Helping Hands for Ms. Smith's injuries. Nothing in the record before us shows affirmatively that plaintiff argued reformation of the policy before the trial court. Therefore, we will not review this argument because it was not properly preserved for appeal.

Also, to the extent that plaintiff asserts the reformation argument is part of the declaratory judgment action, that argument fails. "The purpose of the Declaratory Judgment Act is, to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." *Nationwide Mut. Ins. Co. v. Roberts*, 261 N.C. 285, 287, 134 S.E.2d 654, 657 (1964) (internal quotation marks omitted). While the Declaratory Judgment Act should be liberally construed the Act applies "only when the pleadings and evidence disclose the existence of a genuine controversy between the parties to the action, arising out of conflicting contentions as to their respective legal rights and liabilities under a deed, will, contract, statute, ordinance, or franchise." *Id.* at 287, 134 S.E.2d at 656–57. Thus, a declaratory judgment action is appropriate when it will "alleviat[e] uncertainty in the interpretation of [a] written instrument[]." *Danny's Towing 2,*

*Inc. v. N.C. Dep't of Crime Control & Pub. Safety*, 213 N.C. App. 375, 382, 715 S.E.2d 176, 181 (2011).  However, our courts have held that a declaratory judgment action is inappropriate when used as "a vehicle for the nullification of [written] instruments."  *Farthing v. Farthing*, 235 N.C. 634, 635, 70 S.E.2d 664, 665 (1952).

While none of the previously cited cases directly address plaintiff's argument, they do provide a framework for when a declaratory judgment action is appropriate.  Plaintiff seems to assert that the trial court should have reformed the terms of the automobile liability policy because the language of the policy was intended to apply to a narrower scope of causation than N.C.G.S. § 20-279.21, and therefore, plaintiff should have to pay only the statutorily mandated minimum coverage and not the minimum coverage stated in the policy.  Plaintiff's argument asserts that this Court should change the terms of the policy based on the interaction between the language of the parties' agreement and the requirements of statutory law.  The Declaratory Judgment Act, however, applies to the *interpretation* of written instruments.  Therefore, we find that this type of determination is beyond the scope of the Declaratory Judgment Act.

For the reasons stated above we affirm.

Affirmed.

Judges McGEE and CALABRIA concur.