IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-701

Filed 6 May 2026

Swain County, No. 23CV000024-860

ROBINSON JOSEPH MYERS and ELIZABETH OWL-MYERS, Plaintiffs,

v.

SMOKY MOUNTAIN COUNTRY CLUB PROPERTY OWNERS' ASSOCIATION, INC.; SHIRLEY SCHUBERT in her individual and legal capacity; and ED LAWSON in his individual and legal capacity, Defendants.

Appeal by defendants from order entered 17 January 2025 by Judge Gary M. Gavenus in Swain County Superior Court. Heard in the Court of Appeals 24 March 2026.

> *Hedgepeth Law Group, PLLC, by Shira L. Hedgepeth, for the plaintiffs-appellees.*

> *Rayburn Cooper & Durham, PA, by Ashley B. Oldfield and Ross R. Fulton, and David Sawyer, for the defendant-appellants.*

TYSON, Judge.

Smoky Mountain Country Club Property Owners' Association, Shirley Schubert, and Ed Lawson (collectively, "the Association") appeal from the trial court's order granting summary judgment on a declaratory judgment action in favor of Robinson Joseph Myers and Elizabeth Owl-Myers ("the Myers"). We reverse the trial court's order and remand.

## I. Background

Smoky Mountain Country Club ("SMCC") is a planned residential community located in Whittier, North Carolina. It is governed by the Amended and Restated Declaration of Covenants, Conditions and Restrictions, and Reservation of Easements for Smoky Mountain Country Club ("the Declaration"), recorded on 23 November 1999 in the Swain County Registry, and by the North Carolina Planned Community Act. *See* N.C. Gen. Stat. Chapter 47F (2025). The parties to the Declaration are: (1) the developer and declarant, Conley's Creek Limited Partnership ("CCLP") and its successors and assigns; (2) owners of lots, townhomes, and condominiums in SMCC ("Owners" or "Homeowners"); and, (3) the Association. All home or lot owners in SMCC are required to be members of the Association.

## A. Clubhouse Dues

Pursuant to the Declaration, CCLP agreed to construct recreational facilities, known as the Clubhouse Use Facilities ("the Clubhouse"), and grant to the Association and the Homeowners a perpetual nonexclusive right to use the Clubhouse and facilities. The Homeowners agreed to pay Clubhouse Dues to the Association, which agreed to assess, bill, and collect the Clubhouse Dues from the Homeowners and pay the dues to CCLP ("the Clubhouse Dues Agreement"). CCLP completed construction of the Clubhouse in June 2002, at which time the Clubhouse Dues Agreement went into effect.

The Myers purchased a condominium unit in SMCC. The deed, recorded on 21 November 2006, specifically stated the unit was subject to the Declaration. Pursuant

to the Declaration and upon purchase, the Myers became members of the Association and were bound by the Clubhouse Dues Agreement.

On 13 January 2013, CCLP assigned to SMCC Clubhouse, LLC ("SMCC Clubhouse") all of its rights, duties and obligations under the Clubhouse Dues Agreement, including its right to receive the Clubhouse Dues paid to the Association by the Homeowners.

**B. The Assessment**

In 2014, the Association's Board of Directors voted to discontinue its assessment, billing and collection of Clubhouse Dues from the Homeowners for payment to SMCC Clubhouse. As a result, SMCC Clubhouse filed suit against the Association and alleged breach of the Clubhouse Dues Agreement. The case reached this Court on appeal, which held the Clubhouse Dues Agreement was valid and enforceable, reversed summary judgment in favor of the Association against SMCC Clubhouse on this issue, and remanded for a jury trial. *Conleys Creek Ltd. P'ship v. Smoky Mountain Country Club Prop. Owners Ass'n*, 255 N.C. App. 236, 805 S.E.2d 147 (2017).

On remand and following a jury trial, a judgment was entered on 31 May 2019 in the amount of $7,071,054.46 in favor of SMCC Clubhouse against the Association. The trial court later entered an order to award attorney's fees against the Association in the amount of $772,488.30.

There were 163 lots in SMCC, including the Myers' lot. The POA levied an

assessment ("the Assessment") against each of the 163 lots for $48,120.00 ($7,071,054.46 plus $772,488.30, divided by 163).

## C. The Bankruptcy and Confirmation Order

On 26 July 2019, the Association filed a Chapter 11 petition in the United States Bankruptcy Court for the Western District of North Carolina. The Association filed an Amended Plan of Reorganization ("the Plan"), which provided an installment payment plan by which the Association would pay its court-ordered obligations to SMCC Clubhouse. On 19 December 2019, the Bankruptcy Court entered an order to confirm the Plan ("the Confirmation Order").

Pursuant to the Plan, the Association agreed to assess, bill, and collect: (1) unpaid delinquent Clubhouse Dues owing by the Homeowners as of 31 December 2019; (2) future Clubhouse Dues owing by the Homeowners under the Clubhouse Dues Agreement that accrue from and after 1 January 2020; and, (3) $1,500,000 in three annual installments of $500,000 from the 163 Homeowners, with each Homeowner assessed $9,200 in three annual installments of $3,066.67. The Homeowners' installments were due on the first of January of 2020, 2021, and 2022. The Association was required to pay all amounts collected from the Homeowners to SMCC Clubhouse as payments on the 31 May 2019 judgment and subsequent order awarding their attorney's fees.

## D. The Foreclosure Proceeding

The Myers refused to pay the assessment on their lot pursuant to the Plan and

Confirmation Order. On 17 October 2022, the Association filed a claim of lien on the Myers' lot to secure all sums due to the Association through the date the claim of lien was filed, as well as any sums due to the Association thereafter. On 17 April 2023, the Association commenced this foreclosure proceeding to collect the Assessment in the full, original pro-rated amount of $48,120.00.

On 21 July 2023, the Swain County Clerk of Superior Court entered an Order Allowing Foreclosure Sale. The Myers appealed the Order to the Swain County Superior Court and filed the following: (1) a motion for leave to amend their Answer pursuant to Rule 15; (2) a motion to set aside the Clerk's Order Allowing Foreclosure Sale pursuant to Rule 60(b)(4); and, (3) a motion to dismiss the foreclosure proceeding pursuant to Rules 12(b)(1) and (6).

On 8 March 2024, the Association filed a motion to expunge the Myers' Answer on the grounds the North Carolina Rules of Civil Procedure do not apply to the foreclosure proceeding.

The Myers' appeal from the Clerk's Order Allowing Foreclosure Sale was noticed for hearing on 11 March 2024. At that hearing, the Superior Court began by hearing the Myers' motions and the Association's motion to expunge the Myers' Answer. The court orally ordered the Answer and the Myers' motions to be stricken from the record. Immediately thereafter, the trial court, on its own motion, stayed further proceedings in the foreclosure proceeding. No further proceedings in the foreclosure proceeding were held.

Ten months later, on 17 January 2025, the court entered a written order which concluded the Association is not the owner of the debt because the Confirmation Order assigned the debt to SMCC Clubhouse, and the Association did not have standing to bring the foreclosure proceeding. The Association appealed from the order dismissing the foreclosure proceeding in *In re Myers* (COA25-550), a companion case, which we hear and decide contemporaneously with this appeal. In that case, we hold the trial court erred by failing to conduct a *de novo* review on the Association's appeal from the foreclosure proceeding and vacate and remand the order dismissing the foreclosure.

### E. The Declaratory Judgment Action

On 10 February 2023, prior to the commencement of the foreclosure proceeding, the Myers filed a complaint seeking a declaratory judgment of the relative rights and obligations of the parties regarding the Clubhouse Dues and any assessment arising out of the Clubhouse Dues. The Myers filed an amended complaint on 8 March 2023. The complaint sets forth numerous allegations as to why the Clubhouse Dues payment obligation is unenforceable. The Association answered and filed counterclaims, including a counterclaim for judicial foreclosure of their lot to collect the assessment for $48,120.00.

The Myers filed a motion for partial summary judgment on 14 June 2023, and again on 24 January 2024, which sought summary judgment on their claim for declaratory judgment. They argued, *inter alia*, the covenants concerning the

Clubhouse Dues Agreement are unconscionable, void, and unenforceable.

The trial court conducted a hearing on 11 March 2024. The court did not decide the matter on that date and entered a written order on 17 January 2025, over ten months later. The court ordered: (1) "Pursuant to Chapter 47 and Chapter 55A, the Clubhouse dues are not a valid fee when applied to the [Myers]," and (2) "[the Myers] are not obligated to pay the Clubhouse Dues fees from the filing of this action on February 10, 2023."

## II. Issues

The Association argues: (1) the trial court erred by granting summary judgment in favor of the Myers where a genuine issue of material fact exists; and, (2) the trial court lacked subject matter jurisdiction to enter the summary judgment order granting declaratory judgment in favor of the Myers.

## III. Appellate Jurisdiction

An order is interlocutory if it does not fully dispose of a case and "leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950) (citation omitted). "A grant of partial summary judgment, because it does not completely dispose of the case, is an interlocutory order from which there is ordinarily no right of appeal." *Curl v. American Multimedia, Inc.*, 187 N.C. App. 649, 652, 654 S.E.2d 76, 78-79 (2007) (citation omitted).

Unless the trial court has certified as immediately appealable pursuant to Rule

54(b) of the Rules of Civil Procedure concluding there is no just reason to delay the appeal, a party may only appeal from an interlocutory order when "the order deprives the appellant of a substantial right that would be lost in the absence of an immediate appeal." *Parmley v. Barrow*, 253 N.C. App. 741, 746, 801 S.E.2d 386, 389-90 (2017) (citation and quotation marks omitted).

We determine whether a substantial right is affected on a case-by-case basis, and by considering the particular facts and procedural context of the case. *Barnes v. Kochhar*, 178 N.C. App. 489, 497, 633 S.E.2d 474, 479 (2006). "A substantial right is a legal right affecting or involving a matter of substance as distinguished from matters of form: a right materially affecting those interests which [one] is entitled to have preserved and protected by law: a material right." *Gilbert v. N.C. State Bar*, 363 N.C. 70, 75, 678 S.E.2d 602, 605 (2009) (citation and quotation marks omitted).

Here, the summary judgment order removes the Association's ability to assess, bill, and collect Clubhouse Dues from the Homeowners in contravention of the requirements of the Declaration, Clubhouse Dues Agreement, and the Plan and Confirmation Order. The grant of partial summary judgment in this case affects the substantial rights of the Association and this appeal is properly before us. *Id.*

### IV. Standard of Review

Whether a trial court has subject matter jurisdiction is a question of law, also reviewed *de novo* on appeal. *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010).

This Court also reviews an appeal from summary judgment on a declaratory judgment claim *de novo*. *Integon Nat'l Ins. Co. v. Helping Hands Specialized Transp., Inc.*, 233 N.C. App. 652, 654, 758 S.E.2d 27, 30 (2014).

"Summary judgment is a device whereby judgment is rendered if the pleadings, depositions, interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." *Dalton v. Camp*, 353 N.C. 647, 650, 548 S.E.2d 704, 707 (2001) (citing N.C. Gen. Stat. § 1A-1, Rule 56(c)).

Under Rule 56, "[t]he moving party has the burden to show the lack of a triable issue of fact and to show that he is entitled to judgment as a matter of law." *Ron Medlin Constr. v. Harris*, 364 N.C. 577, 580, 704 S.E.2d 486, 488 (2010) (citation and internal quotation marks omitted). "[S]ummary judgment must be denied the party with the burden of proof if his opponent submits affidavits and other supporting materials which cast doubt upon the existence of a material fact, or if such doubts are raised by the movant's own materials[.]" *Brooks v. Mount Airy Rainbow Farms Ctr., Inc.*, 48 N.C. App. 726, 729-30, 269 S.E.2d 704, 706 (1980).

"The trial judge must consider all the presented evidence in a light most favorable to the nonmoving party, and all inferences of fact must be drawn against the movant and in favor of the nonmovant." *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 682, 565 S.E.2d 140, 146 (2002) (citations, brackets, and internal quotation marks omitted).

## V. Subject Matter Jurisdiction

### A. Actual Controversy

The Association first argues the trial court did not have subject matter jurisdiction to grant partial summary judgment because the Myers did not establish the existence of an actual controversy regarding the enforceability of the Clubhouse Dues Agreement.

The existence of an actual controversy is a jurisdictional prerequisite to an action under the Declaratory Judgment Act. *Gaston Bd. of Realtors, Inc. v. Harrison*, 311 N.C. 230, 234, 316 S.E.2d 59, 61 (1984). Such controversy "must exist between the interested parties both at the time of filing the complaint and the time of hearing at which the matter comes before the trial court for a hearing." *Chapel H.O.M. Assocs., LLC v. RME Mgmt., LLC*, 256 N.C. App. 625, 629-30, 808 S.E.2d 576, 580 (2017) (citation omitted). "To satisfy the jurisdictional requirement of an actual controversy, it must be shown in the complaint that litigation appears unavoidable. Mere apprehension or the mere threat of an action or suit is not enough." *Wendell v. Long*, 107 N.C. App. 80, 82-83, 418 S.E.2d 825, 826 (1992) (citations omitted).

The Myers' Amended Complaint alleges they "have received notice of Association moving to file a claim of lien and foreclosure against [them] for failure to pay the clubhouse dues and the special assessment arising from the clubhouse," and the Association is "moving to file a claim of lien and foreclose against [them] for unpaid assessment under the Confirmation Plan and Declaration."

The Association asserts these are not factual allegations that "litigation appears unavoidable" regarding whether the covenant to pay Clubhouse Dues is enforceable. Given the facts, parties, and procedural history of this case, we disagree.

This case and its antecedents are no stranger to this Court. The underlying dispute has come before the Court in some form or another at least *ten* times, and this appeal has two companion appeals. The time, resources, and energy spent arguing over the enforceability of these Clubhouse Dues in the trial, appellate, federal, and business courts over the years is immense. To believe the Myers complaint did not present an "actual controversy" that would not likely proceed to litigation would be a delusion. *See id.* This argument is overruled.

**B. Jurisdiction to Void or Nullify the Clubhouse Dues Agreement**

Under the covenant to pay Clubhouse Dues in the Declaration, each Owner of a lot is granted "a perpetual nonexclusive right to use the Clubhouse Use Facilities," which the Association asserts is an easement and interest in real property, for which the payment of Clubhouse Dues is consideration. The Association argues the Myers' request to void the covenant to pay Clubhouse Dues amounts to a request to void the conveyance of the "perpetual nonexclusive right to use the Clubhouse Use Facilities." *See A. Perin Dev. Co. v. Ty-Par Realty, Inc.*, 193 N.C. App. 450, 451-52, 667 S.E.2d 324, 326 (2008) ("[J]urisdiction does not exist under the [Declaratory Judgment] Act for the purpose of declaring a conveyance void or nullifying a written instrument.").

"The Declaratory Judgment Act, [N.C. Gen. Stat. §] 1-253 *et seq.*, affords an

appropriate procedure for alleviating uncertainty in the interpretation of written instruments and for clarifying litigation." *Bellefonte Underwriters Insur. Co. v. Alfa Aviation*, 61 N.C. App. 544, 547, 300 S.E. 2d 877, 879 (1983) (citation omitted).

The Myers complaint sought declaratory judgment to determine, *inter alia*, "the relative rights of the parties in regard to the Clubhouse Dues and any assessment arising from the Clubhouse Dues." The complaint sought the court's interpretation of a written instrument, a function within the scope of the trial court's authority under the Declaratory Judgment Act. *See id.* This argument is overruled.

## C. Standing

The Association further argues the trial court did not have subject matter jurisdiction, because the Myers did not have standing to seek declaratory judgment. *See Pugh v. Howard*, 288 N.C. App. 576, 580, 887 S.E.2d 734, 739 (2023) (citation omitted) ("If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim."). We disagree.

A declaratory judgment may be brought by "[a]ny person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a . . . contract . . . ." N.C. Gen. Stat. § 1-254 (2025). The Myers possess the requisite interest as property owners subject to the challenged covenant and assessment obligations. This argument overruled.

## VI. Existence of a Valid Debt

The Association argues the trial court erred by entering summary judgment

on the declaratory judgment action in favor of the Myers where: (1) a genuine issue of material fact existed as to whether the Myers agreed to be bound by the Clubhouse Dues Agreement; (2) the Association is authorized under the Declaration and the Planned Community Act to assess and collect Clubhouse Dues; and, (3) the covenant to pay Clubhouse Dues is a real covenant that is enforceable against the properties owned by the Myers and other owners. We agree with the Association on all of these contentions and reverse the trial court's order.

## A. The Trial Court's Order

No evidence was presented at the 11 March 2024 hearing. The trial court noted it had reviewed the file, read the legal memoranda of the parties, considered arguments of counsel made in open court, and took judicial notice of the numerous related files in this matter. The trial court entered a written order over ten months later on 17 January 2025.

In summary, the trial court concluded: (1) Pursuant to Chapter 47, the Planned Community Act, and Chapter 55A, the North Carolina Nonprofit Corporation Act, the Association cannot collect the Clubhouse Dues for the benefit of SMCC's "profit" or account; and, (2) the obligation to pay the Clubhouse Dues under the Declaration is a personal covenant not a real covenant because it does not run with the land, and is unenforceable against the Myers. Based upon these conclusions, the trial court ordered:

1.  Pursuant to Chapter 47 and Chapter 55A, the

Clubhouse dues are not a valid fee when applied to [the Myers].

2.      [The Myers] are not obligated to pay the Clubhouse Dues fees from the filing of this action on February 10, 2023.

### B. Conley's Creek

This Court has already addressed this issue in *Conley's Creek Ltd. P'ship v. Smoky Mountain Country Club Prop. Owners Ass'n*, 255 N.C. App. 236, 805 S.E.2d 147 (2017), an appeal that involved the same Declaration and Clubhouse Dues Agreement the parties continue to dispute over. In *Conley's Creek*, the Association had prayed the trial court for (1) a declaration that "the Association has no duty under the law to collect Clubhouse Dues from [Home]owners and that any such duty stated in the Declaration is null and void[,]" and (2) the repayment of "all Clubhouse Dues improperly collected and paid [to the Developer]." *Id.* at 246, 805 S.E.2d at 154. The Association argued the Planned Community Act did not authorize it to collect dues from the Homeowners to pay a third party for use of property that is not owned by or part of the Planned Community. *Id.* The Clubhouse is located outside of the gates of SMCC and is open to membership for individuals who are not SMCC property owners.

This Court held, "the 1999 Declaration specifically authorizes the Association to assess its [Homeowners] for the Clubhouse Dues," and "the [Planned Community] Act does not proscribe the granting of this power to an association." *Id.* The Court further held, although the Clubhouse is not a "common element" of SMCC under the

Planned Community Act, the Act "also empowers an association to assess dues for 'services,'" including "the Developer's role of providing access to and maintaining a clubhouse amenity." *Id.*

The trial court's order states it took judicial notice of, *inter alia*, the file in case number 14 CVS 238, which is the case that culminated in our *Conley's Creek* decision. Our Court has reviewed this matter and squarely established the Association is within its authority, under the 1999 Declaration and the PCA, to assess, bill, and collect the Clubhouse Dues from homeowners and pay the dues to CCLP, and later to SMCC Clubhouse. *See id.*

### C. The Myers' Obligation

Because we have already decided the validity of the Clubhouse Dues Agreement and payment arrangement, the only remaining question is whether the Myers are subject to it.

Pursuant to the 1999 Declaration, the POA and Homeowners possess a perpetual nonexclusive right to use the Clubhouse facilities. In consideration, each property owner is required to pay Clubhouse Dues to the Association. The Association is required to pay the collected Clubhouse Dues to the Developer. Under the Declaration, the obligation of the Homeowners to pay Clubhouse Dues to the Association "shall be absolute for the entire period of time that such Owner is an Owner . . . and shall not be dependent on such Owner's actual use of the [Clubhouse]."

The Declaration was in effect and binding when the Myers purchased their two

properties in 2006 and 2008. Both deeds specifically state the Myers' lots are conveyed subject to the Declaration. Under our *Conley's Creek* decision, the Declaration, and pursuant to the deeds which conveyed their properties, the Myers are clearly obligated to pay the Clubhouse Dues to the Association. The fact the Clubhouse Dues are now due and payable pursuant to the Bankruptcy Court's Plan and Confirmation Order does not relieve them or any other property owner from their obligations. *See Conleys Creek*, 255 N.C. App at 248, 805 S.E.2d at 155 ("[H]omeowners within a planned community are generally obligated . . . to pay any dues which are assessed by their association.")

## VI. Conclusion

Upon purchasing their properties, the Myers agreed to be bound by the Clubhouse Dues Agreement; the Association is authorized under the Declaration and the Planned Community Act to assess and collect Clubhouse Dues; and the covenant to pay Clubhouse Dues is a real covenant, enforceable against the properties owned by the Myers and other owners. The trial court erred in granting partial summary judgment in favor of the Myers.

We reverse the order of the trial court, and remand with instructions to enter an order for the Association and SMCC Clubhouse as is consistent with this opinion and our prior opinion in *Conley's Creek*. On remand, the trial court shall determine the monetary amount of the Clubhouse Dues outstanding and owed by the Myers to the Association. *It is so ordered.*

REVERSED AND REMANDED.

Judge COLLINS and Judge FREEMAN concurs.